# McMonagle, Appellant, *v.* Allstate Insurance Company.

Argued November 14, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, CERCONE, and SPAETH, JJ. (SPAULDING, J., absent.)

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮

▮▮▮▮▮▮▮▮ Before SILVESTRI, J.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

*Joseph M. Zoffer,* with him *Martino, Ferris & Zoffer,* for appellant.

*Robert S. Grigsby,* with him *Thomas A. Matis,* and *Thomson, Rhodes & Grigsby,* for appellee.

OPINION PER CURIAM, April 3, 1974:
Order affirmed.

---

OPINION BY JACOBS, J., IN SUPPORT OF THE ORDER PER CURIAM:

I would affirm the dismissal by the lower court of appellant's class action on the basis that it did not abuse its discretion in dismissing the class action.

It is clear that Pa. R. C. P. 2230(a), which authorizes the commencement of class actions, was based upon Rule 23(a) of the Federal Rules of Civil Procedure. The note to Pa. R. C. P. 2230(a) discloses that "[t]his subdivision adopts the practice under . . . F.R.C.P. No. 23(a) . . . ." In 1966, Fed. R. Civ. P. 23 was substantially changed. In my opinion there would be no purpose in following the outdated practice of a rule that has been revised. Therefore, we should give persuasive effect to the federal law under the present Fed. R. Civ. P. 23.

A person who brings a class action under Fed. R. Civ. P. 23 must satisfy several requirements. For a class action to be maintained it must be demonstrated that "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of

law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). After these prerequisites are met, the proponent of the class action must show one of the following:

"(1) the prosecution of separate actions by or against individual members of the class would create a risk of

"(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

"(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

"(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

"(3) the court finds that the question of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the liti-

gation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b). In my opinion, the only subdivision of Fed. R. Civ. P. 23(b) which could possibly apply to the present case would be subdivision (3). Subdivision (1)(A) is not applicable because there is no threat of inconsistent verdicts if several suits are brought. One court has even held that subdivision (1)(A) does not apply to cases concerning monetary damages since the principle of *stare decisis* would insure uniform results. *Rodriquez v. Family Publications Service*, 57 F.R.D. 189 (C.D. Calif. 1972). Subdivision (1)(B), as well, is not applicable for there is no evidence that separate suits by some members of the class would impair or impede the ability of other members to protect their interests. See Wright & Miller, Federal Practice and Procedure: Civil § 1774 (1972). The typical case under (1)(B) is where class members have claims against a fund that may later prove to be insufficient to satisfy all of them. *Id.* In the present case, I can foresee no prejudice by allowing each policyholder in the class to maintain his own lawsuit. Subdivision (2) is clearly not applicable because injunctive or declaratory relief was not requested by appellant in her complaint, nor appropriate under the circumstances of this case.

Unlike subsections (1) and (2), subsection (3), by its own language, gives the trial court wide discretion in determining the fate of the class action. To maintain a class action, under subsection (3), it is necessary that "the court [find] that the questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for . . . adjudication of the controversy." Fed R. Civ. P. 23(b)(3). [Emphasis added.] In addi-

tion, various factors, such as the desirability of concentrating the action in the particular forum, the interest of the individual class members which may conflict with the bringing of the class action, and the difficulties of managing a class action, are listed in subsection (3) for the court to consider in reaching its decision.

In the present case, the lower court reviewed these factors and it concluded that "[t]here would be a great expenditure of time, effort and expense to have all the claims disposed of in Allegheny County, not only for the claimants and attorneys but for this court. The claims can be handled more efficiently and with less expense in the respective judicial district." In essence, the court below was of the view that such claims could be better pursued individually than by a class action. If Fed. R. Civ. P. 23(b)(3) means what it says, these findings of the lower court, which are supported by the record, are determinative of the present case. In my opinion, the facts of this case do not indicate that the lower court abused its discretion and its order should be affirmed.

WATKINS, P. J., joins in this opinion.

---

OPINION BY CERCONE, J., IN SUPPORT OF THE ORDER PER CURIAM:

In 1941, when Pennsylvania adopted its present rule permitting the use of the class action device in courts of law, the Supreme Court manifested a clear intention to adopt the practice, as it was developing, under F.R.C.P. 23(a).[1] While Pennsylvania did not

---

[1] *Rule 2230. Class Actions.*

(a) If persons constituting a class are so numerous as to make it impracticable to join all as parties, any one or more of them who will adequately represent the interest of all may sue or be sued on behalf of all, but the judgment entered in such action shall not impose personal liability upon anyone not a party thereto.

use the definitive language found in the subsections of 23(a), distinguishing the three types of class actions—so called, "true, hybrid and spurious"[2]—recognition that there were both procedural and substantive differences between the various kinds of class actions that might be maintained was inevitable. The most articulate, though often criticized, description of those differences, first suggested by Professor Moore, developed in federal practice under rule 23(a). Thus, the courts and commentators in Pennsylvania adopted these classifications and terminology, a course not unusual in light of the fact that there has been "almost complete acceptance by the courts of Moore's labels and of the binding effect which he attributes to each classification."[3]

*Note of the Procedural Rules Committee*—This subdivision adopts the practice under Pennsylvania Equity Rule 16 and Fed. R.C.P. No. 23(a), 28 U.S.C.A. in providing for a class suit where the members of a class are so numerous as to make it impractical to join all as parties.

[2] Original F.R.C.P. 23 read, in pertinent part, as follows:

"(a) *Representation.* If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is

"(1) joint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it;

"(2) several, and the object of the action is the adjudication of claims which do or may affect specific property invovled in the action; or

"(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought. The labels, true, hybrid and spurious, which were used to identify class actions under subsections (1), (2) and (3) respectively, were first used by Professor Moore, the principal drafter of the rule."

[3] Comment, 71 Harv. L. Rev. 874, 930 (1958).

At least three of the most authoritative works on Pennsylvania civil procedure indicate that the types of class actions established under old F.R.C.P. 23(a) are equally a part of Pennsylvania law.[4] In addition, while the appellate courts in Pennsylvania have not had the occasion to treat the distinctions between the various types of class actions, the lower courts have frequently recognized Moore's labels and the concomitant procedural and substantive differences they entail.[5]

It has been said that while "the term 'class suit' is used to describe at least three distinct types of representative suits . . . much apparent inconsistency results from the failure to recognize the differences between them."[6] I feel that the discussions of whether this is a proper case for the maintenance of a class action, which appear not only in the concurring and dissenting opinions of my brethren, but also in the briefs of both parties and the opinion of the court below, is required only if one fails to recognize the distinctions between the so-called "true, hybrid and spurious" class actions, and their bearing upon this appeal in light of its current posture.

The instant case clearly falls under the 23(a)(3)-type class action. "[T]he character of the right sought to be enforced [namely, payment under the Medical Payments provision of the policy after an arbitration award under the Uninsured Motorists provision] for

---

[4] See Goodrich-Amram §2230(a)-1 et seq.; 4 Anderson, Pennsylvania Practice, Rule 2230 (1962) ; 2 Standard Pennsylvania Practice, Parties §96 (1956).

[5] See, e.g., *Philadelphia Council of Property Owners v. Philadelphia*, 49 D. & C. 2d 245 (1969) ; *Sipe v. Pohland Bros.*, 51 Westmoreland L.J. 125 (1966) ; *Beauty Hall, Inc. v. State Board of Cosmetology*, 77 Dauph. 319 (1961) ; *Charles v. Crestview Properties, Inc.*, 15 D. & C. 2d 568 (1957). See also the cases cited in 4 Anderson, Pennsylvania Civil Practice, §2230.6 (1962).

[6] Goodrich-Amram, §2230(a)-1.

. . . the class is . . . several . . . ,"[7] and the object of the action is *not* any specific property of Allstate, such as assets in receivership or a particular parcel of real estate.[8] The right will derive from the existence of separate insurance contracts containing Medical Payment and Uninsured Motorists provisions, and the recoveries of the "class members" will neither be mutually dependent (as is typically the case in a 23(a)(1) or "true" class action), or mutually exclusive (as is sometimes the case under a 23(a)(2) or "hybrid" class action).[9] As the concurring opinion of Judge JACOBS indicates, this "spurious" type of class action requires asking whether there exists some "common question of law or fact" which supplies a sufficient community of interest that the advantages of joinder, for the parties and the court, outweigh its disadvantages.[10]

But, having identified the class action as a spurious-type class suit, the question remains regarding who is bound by the adjudication of the "common question of law or fact." While this question is apparently one of first impression before this Court, the overwhelming weight of authority is that in a spurious class action only those who intervene or are joined prior to judgment are bound by the determination of the "common question".[11] While the language of Pa. R.C.P. 2230

[7] F.R.C.P. 23(a)(2) and (3), supra note 2.

[8] F.R.C.P. 23(a)(2).

[9] A true class action most often involves a taxpayer's suit or a shareholder's derivative suit, while hybrid class actions are usually raised by a creditor's bill, or a suit brought by trust beneficiaries.

[10] See 59 Am.Jur. 2d, Parties §62 (1971).

[11] "The 'spurious' action envisaged by original Rule 23 was in any event an anomaly because, although denominated a 'class' action and pleaded as such, it was supposed not to adjudicate the rights or liabilities of any person not a party. It was believed to be an advantage of the 'spurious' category that it would invite decisions that a member of the 'class' could . . . intervene on an ancillary basis." See 3B Moore's Federal Practice, §23.01 [8] (1974).

relates only to class defendants who are not parties,[12] Pennsylvania authorities are consistent with the other authorities under former rule 23(a)(3) in holding that a potential "spurious" class member must "opt-in" prior to judgment, or the decision of the court will not be binding in any suit brought or defended by him. "In the case of a spurious class suit, the judgment of the court should be binding only upon the parties and those who have become parties by *intervention*. Since the claims asserted are separate or independent the action of the court affects only the claims of the parties before it and does not affect the claim of any person not a party."[13]

Of course, the original rule was amended in 1966 and got rid of the substantial identity between permissive joinder and spurious class actions by making two major changes. First, in order to maintain what was previously described as a spurious class action, the common question of law or fact must predominate. F.R.C.P. 23(b)(3). Second, all members of the class are bound by the adjudication unless they notify the court of their desire not to be bound. F.R.C.P. 23(c)(2)(B). As was noted by the court in *Eisen v. Carlisle & Jacquelin*, 391 F. 2d 555, 562 (2d Cir. 1968) (usually referred to as *Eisen II*), "the standards for representation under the old spurious class action were not as rigorously enforced, due to the minimal *res judicata* effects given to the judgments in these suits." See also *Oppenheimer v. F. J. Young & Co.*, 144 F. 2d 387 (2d Cir. 1944). As some federal courts have already questioned the propriety of binding the absent members of a 23(b)(3) class [see, e.g., *School Dist. of Philadelphia v. Harper & Row Publishers, Inc.*, 267 F. Supp. 1001 (E.D. Pa. 1967)'], even graver doubts should exist if it be suggested that absent members should be bound by the determination of a relatively minor, though not insubstantial, issue in a case in which the absent members did not participate.

[12] This *caveat* is a remnant of the old Pennsylvania Equity Rule 16. See Goodrich-Amram, §2230(a)-6 at p. 85, n. 12.

[13] Goodrich-Amram, §2230(a)-6 at p. 85; 2 Standard Pennsylvania Practice, Parties §96 at p. 418, n. 16 (1962); 4 Anderson §2230.7 (1962). See also *Federation of Salaried Unions v. Westinghouse*, 7 D. & C. 2d 281, 286 (1956).

Thus construed, it becomes apparent that the spurious class action is little more than a permissive joinder device[14] or, as some courts have called it, "an invitation . . . to join the battle."[15] "The authorization of the spurious class action in Pennsylvania is, in a sense, a procedural duplication [of the permissive joinder rule] . . ."[16]

Returning to the particular facts of the instant case, to grant the appellant's motion to reinstate his suit as a class action would not operate as an invitation to join the battle, but rather as an invitation to join the victory feast. While it is often suggested that interventions should be liberally granted in spurious class actions,[17] Pa. R.C.P. 2327 requires intervention "during the pendency of the litigation." Some doubt as to whether an action was pending after judgment but prior to appeal arose when one of the leading Pennsylvania commentators suggested that the terminative date of "pendency" was the date when an appeal was filed. However, in *School Dist. of Robinson Twp. v. Houghton*, 387 Pa. 236, 241-42, 128 A. 2d 58 (1956), the Supreme Court explicitly rejected that view in holding that the pendency of an action ends with the entry of judgment. Furthermore, this decision was followed in both *Howell v. Franke*, 393 Pa. 440, 143 A. 2d 10 (1958), and *Admiral Homes, Inc. v. Floto Man-*

[14] In addition to the authorities cited in note 13, supra, see Frankel, Some Preliminary Observations Concerning Civil Rule 23, 43 F.R.D. 39, 43 (1967) ; 3 Moore's Federal Practice ¶23.10 at p. 3442 (2d ed. 1967) ; C. Wright, Law of Federal Courts 310 (2d ed. 1970). See also *Eisen v. Carlisle & Jacquelin*, supra, note 11.

[15] *Lipsett v. United States*, 359 F. 2d 956, 958 (2d Cir. 1966) ; *Nagler v. Admiral Corp.*, 248 F. 2d 319, 327 (2d Cir. 1957).

[16] 4 Anderson, Rule 2230.7 at p. 588 (1962). See also *Federation of Salaried Unions v. Westinghouse*, supra, note 13.

[17] See, e.g., *York v. Guaranty Trust Co.*, 143 F. 2d 503 (2d Cir. 1944), rev'd on other grounds, 326 U.S. 99 (1945).

*agement Corp.*, 397 Pa. 509, 156 A. 2d 326 (1959). And, there is the rub.

In the instant case the appellant moved his cause of action to judgment through his motion for judgment on the pleadings, and by doing so, has rendered any order we might grant reversing the lower court's order which dismissed the class action a sterile vanity. In any event, the appellant's motion for summary judgment prior to the final determination of the class action issue made moot the court's refusal to allow the action to proceed as a class action. Even if the lower court's determination incidental to the motion for summary judgment had allowed the action to be maintained as a class action, the entry of judgment for the plaintiff would have closed the "class" before other potential "class members" could enter. Apparently appellant wanted the immediate summary judgment after a favorable determination of the class action issue, but he misconceived the mechanics of "spurious" class actions under the old, "opt-in", federal rule, which is the current Pennsylvania rule.

In the "spurious" class action there is no fund established from which class members may draw, and each plaintiff who has joined or intervened must litigate that part of his right of recovery which is not part of the common question. Each plaintiff then takes judgment separately. When all of the "class members" who have joined have taken judgment, the class is closed because the action is no longer pending —there are no more joined plaintiffs before the court. Any intervention thereafter is impossible under Pa. R.C.P. 2327, and the cases cited above which have construed it, simply because there is no action in which to join or intervene.

A plaintiff purporting to represent a class wears two hats. The plaintiff-appellant in the instant case, however, did not wear both hats equally well. When

the plaintiff as an individual sought to take judgment on the pleadings, she jeopardized the interests of potential class members who might have wished to intervene. It was that error, and not, under these circumstances, the essentially *pro forma* and coincidental determination of the trial court that a class action was improper, which contravened the interests of potential class members. The appellant should have asked first and separately for a determination of the class action issue, and if that turned out unfavorably, at least requested a certification for appeal pursuant to 17 P.S. §211.501.[18] Failing that, a reversal of the order of the court below which reinstates the class action is a meaningless gesture which affects the substantial rights of no one, since Pennsylvania practice bars the entry of class members at this stage of the proceedings.

For the above reasons, the appeal should be dismissed.

---

[18] I express no opinion herein as to whether, upon particular facts, a class representative whose class action is terminated may file an appeal as from a final order. See *Green v. Wolf*, 406 F. 2d 291 (2d Cir. 1968); *Eisen v. Carlisle & Jacquelin*, 370 F. 2d 119 (2d Cir. 1966), cert. denied, 386 U.S. 1035 (1967). See also 3B Moore's Federal Practice §23.97 (1974).

---

DISSENTING OPINION BY HOFFMAN, J.:

In this appeal, we must determine whether the lower court erred in dismissing appellant's class action.

Appellant, Margaret McMonagle, was insured by the appellee, Allstate Insurance Company. The policy contained uninsured motorist coverage and medical payments coverage up to a limit of $2,000.00 per person. On February 14, 1969, the appellant was injured in an automobile accident while a guest passenger in an uninsured vehicle. By letter of December 15, 1971, proof of claim was given to Allstate and formal demand was made for an arbitration hearing under the unin-

sured motorist provisions of appellant's policy.[1] This letter contained a list of all medical expenses and records describing the nature and extent of her injuries.

An arbitration hearing was held on February 21, 1973,[2] and on April 2, 1973 an award was rendered in favor of the appellant in the amount of $3,314.50, which included an amount representing appellant's medical expenses. This claim was subsequently paid by Allstate. By letters, dated April 6th and April 9th, 1973, appellant requested additional compensation for her medical expenses under the medical payments coverage of her policy. When no reply was forthcoming,[3] appellant instituted a suit on April 11, 1973, on her own behalf and as representative of a class of Allstate policy holders of the Commonwealth of Pennsylvania who were not reimbursed under the automobile medical payments provisions of Allstate's policy after an uninsured motorist award was rendered in favor of each respective insured.

---

[1] According to the terms of her policy, uninsured motorist claims could only be resolved by submitting to arbitration. Other coverage under the policy may, at the option of the insured, be determined either by arbitration or by court process; no contractual limitation appears with regard to a medical payments claim.

[2] Delay in the arbitration hearing was caused by a dispute between the parties on the question of coverage, which was ultimately resolved in appellant's favor. *Allstate Insurance Company v. McMonagle,* 449 Pa. 362, 296 A. 2d 738 (1972).

[3] For a year and one-half, from the date appellant supplied supportive data for her medical expenses until appellant filed her class action, Allstate made no effort to reimburse her under the medical payments provision of the policy. Contrary to appellee's contention that suit was filed without giving Allstate time to pay appellant's claim in good faith, we find that appellee was notified of appellant's claim for a considerable period of time, during which satisfaction could have been rendered independent of and without prejudice to appellee's position in the uninsured motorist case.

After suit was instituted, Allstate sent the appellant a check in the amount of her medical expenses claim. This offer to reimburse the appellant for her *personal* claim was refused by the return of said check on April 17, 1973. A second tender of settlement was likewise refused on May 29, 1973. Thereafter, based on the pleadings and discovery, both parties moved for summary judgment.[4] The lower court treated the motions as a request for a declaration with respect to the propriety of the class action. The court ruled that the within action was not a proper class action, and that the appellant could not serve as the class representative thereof. In addition, the court entered summary judgment in favor of the appellant *individually,* in the amount of $978.50, representing appellant's own reasonable medical expenses incurred within one year from the date of her accident.[5] The appellant herein has

---

[4] In order to determine the exact number and identity of the class members to the instant case, the appellant served interrogatories upon Allstate to ascertain this information. Answer was not made and a motion for sanctions (which was pending at the time argument was held on the summary judgment motions) was filed to compel answer.

[5] In granting appellant's motion, the Court determined that as a matter of law the appellant was entitled to medical payments under her medical payments coverage, irrespective of an award under the uninsured motorist coverage provisions of her policy. See, *Harleysville Mutual Casualty Company v. Blumling,* 429 Pa. 389, 241 A. 2d 112 (1968); *Johnson v. Nationwide Mutual Insurance Company,* 220 Pa. Superior Ct. 793, 286 A. 2d 448 (1972); other jurisdictions, *in accord*: *Sims v. National Casualty Co.,* 171 So. 2d 399 (Fla. App. 1965); *Fisher v. State Farm Mutual Auto Ins. Co.,* 52 Cal. Rptr. 721 (1966); *Beschnett v. Farmers Equitable Ins. Co.,* 146 N.W. 2d 861 (Minn. 1966); *Moorman v. Nationwide Ins. Co.,* 148 S.E. 2d 874 (Va. 1966).

Since Allstate has not appealed from the lower court's ruling in favor of the appellant on her substantive issue, and, in fact, admits to the justification of her claim on an individual basis, we need not discuss or review the law on the subject, but may limit

appealed from the dismissal of her motion for summary judgment requesting certification that the suit was a proper class action and that she was a proper class representative thereof.

Pa. R.C.P. 2230—Its relationship to F.R.C.P. 23.

Under the procedural rules of this Commonwealth, a party or a group of parties may bring a class action only if "persons constituting a class are so numerous as to make it impracticable to join all as parties" and if they "will adequately represent the interest of all [class members]. . . ." Pa. R.C.P. 2230.[6]

The Rule and the case law in this Commonwealth provide virtually no guidelines for our courts from which an intelligent, orderly determination may be made on the maintenance of a class action suit. Our Supreme Court, however, in fashioning Rule 2230, recognized the great body of federal law in this area. Patterning Rule 2230 after Rule 23 of the Federal Rules of Civil Procedure, our Supreme Court promulgated a broad general rule permitting judicial refinement and construction following the decisions and practice in the federal courts. Indicative of this predilection to model closely developments in the federal law, the following Note was added to Rule 2230(a):

---

our investigation to the issues involving the propriety of the class action and whether the appellant is a proper class representative thereof.

[6] Pa. R.C.P. 2230 states specifically:

"(a) If persons constituting a class are so numerous as to make it impracticable to join all as parties, any one or more of them who will adequately represent the interest of all may sue or be sued on behalf of all, but the judgment entered in such action shall not impose personal liability upon anyone not a party thereto.

"(b) An action brought on behalf of a class shall not be dismissed, discontinued, or compromised nor shall a voluntary nonsuit be entered therein without the approval of the court in which the action is pending."

*"Note: This subdivision adopts the practice under* Pennsylvania Equity Rule 16 and *F.R.C.P. No. 23 (a),* 28 U.S.C.A., in providing for a class suit where the members of a class are so numerous as to make it impractical to join all parties.[7]

The Pennsylvania Rule, while adopting almost identical language as F.R.C.P. 23(a), carefully avoided the difficulties the federal courts faced in identify-

---

[7] Rule 2230, which has never been amended or revised, became effective on February 5, 1941. As such, it is undisputed that the intention to follow the practice under F.R.C.P. 23(a) referred specifically to the 1937 Rule, which provided, in part:

*"Rule 23. Class Actions*

"(a) REPRESENTATION. If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is

"(1) joint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right and member of the class thereby becomes entitled to enforce it;

"(2) several, and the object of the action is the adjudication of claims which do or may affect specific property involved in the action; or

"(3) several, and there is a common question of law or fact affecting the several rights and common relief is sought."

Sections (b) and (c) deal with the rights of shareholders and the ability to dismiss or compromise a class action claim, respectively. Section 2230(b) follows the practice of F.R.C.P. 23(c); while, Section (b) of F.R.C.P. 23 is not applicable to the discussion hereunder.

The problems that became apparent under the Original Rule involved the difficulty in pigeon-holing the operative facts of a class action into one of the three jural relationships under subsections (a)(1)(2) and (3). This tripartite classification "baffled both courts and commentators". Note, Federal Class Actions: A Suggested Revision of Rule 23, 46 Col. L. Rev. 818, 822 (1946). The courts spoke of "true", "hybrid" and "spurious" classes. These classes became critical in deciding the questions of jurisdiction and effects of judgments peculiar to the federal courts.

ing the "character of the right" into either "true", "hybrid" and "spurious" classes. Our Supreme Court deliberately failed to include the subsections describing these jural relationships into its own rule. Instead, it expressed the intention merely to "adopt the practice under . . . F.R.C.P. 23(a)".

When F.R.C.P. 23(a) was amended in 1966,[8] these

---

[8] The present rule, as amended in 1966, provides in pertinent part (dealing with the maintainability of a class action):

"*Rule 23. Class Actions*

"(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

"(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

"(1) the prosecution of separate actions by or against individual members of the class would create a risk of

"(A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

"(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

"(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

"(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling

jural relationships were eliminated, for as the Committee noted, these classes "proved obscure and uncertain." While no parallelism between the original and revised Rules was intended, both Rules include as prerequisites to a class action the requirements found in Pa. R.C.P. 2230—"numerosity" and "adequate representation". In my opinion, we may, without exceeding our judicial authority, give persuasive effect to the federal law.

THE INSTANT APPEAL—THE ACTION OF THE LOWER COURT.

In dismissing the appellant's class suit, the lower court entered summary judgment in favor of the appellant on her individual claim against Allstate. In so doing, the trial court determined that there were no material issues of fact or law in dispute. Reviewing the case law on the issue before the court, the court held that Allstate could not "deduct or set off the medical bills . . . from the amount of the arbitration award, . . . that she [Mrs. McMonagle] is entitled to payment of her medical bills under the automobile medical payments provisions of her contract."

Since Allstate has not appealed the court's determination that it was liable to the insured under the medical payments provision despite a prior arbitration award, we need not examine the ultimate merits of the case, nor should we do so. See discussion, *infra*. We do not agree, however, with the trial court's restrictions on the maintainability of a class action. The court stated that "class actions is [sic] a tool to sanc-

---

the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

tion defendants who engage in practices upon the general public in violation of known law." While a class action may serve this purpose, it is not limited to enforcing rights against defendants violating *known* law, but may extend to cases where "there is a common question of law or fact", irrespective of whether the "question" has already been resolved by previous law or whether it is one of first impression. F.R.C.P. 23 (a)(3) and revised F.R.C.P. 23(a)(3) and (b)(3).

After stating that appellant had met the express requirements of Pa. R.C.P. 2230, the trial court stated that other factors compelled the dismissal of the class action: (1) that the lack of a bona fide claim and the in terrorem effect of such a suit could be demonstrated by the appellant's refusal to settle her claim and her "haste to rush to court with a class action without waiting a reasonable time" for an offer of settlement; (2) the court which is burdened with a considerable case load should not consider a claim which could be litigated on an individual basis in the 59 judicial districts; and, (3) appellant's claim could be better resolved in statutory arbitration and not at the time and expense of a class suit.[9]

The trial court refused to apply any of the federal precedents, saying that "[t]he only present relationship between Pa. R.C.P. 2230 and amended F.R.C.P. 23 is in the title."

I recognize the difficult task and the great care exercised by the learned trial court in determining the instant case. I believe, however, that the policy con-

---

[9] While listing nine policy considerations in the dismissal of the class action, the court's reasons may be distilled to the three aforementioned factors. The appellee adds another factor that it considers a bar to the appellant's class suit, and that is that the question of law having been determined as to the individual claimant, there remains no cause of action raising a common question of law or fact as to justify a class action.

siderations relied upon the lower court were improper grounds for dismissal.

## REQUISITES OF A PROPER CLASS ACTION

### 1. Numerosity

Both the express language of Pa. R.C.P. 2230 and F.R.C.P. 23(a) require that the class members be so numerous as to preclude the joinder of the parties. There has been no accepted judicial definition as to the number of parties that must be involved in one class action.[10] Whether a number is so large as to make joinder impracticable is dependent "not upon any arbitrary limit, but rather upon the circumstances surrounding [each] case." Moore, *Federal Practice,* §23.05. In *Dolgow v. Anderson,* 43 F.R.D. 472, 492-493 (E.D.N.Y. 1968), the Court stated that the failure to state the number of class members is not fatal to the maintenance of a class action: "It is true that plaintiffs have not defined the exact number of people in the class that they purport to represent. The class itself, however, has been defined with some precision, i.e., all individuals who bought Yale securities during the period when the allegedly false and misleading

---

[10] Despite the fact that mere number is not the sole criterion in satisfying the numerosity requirement, it is significant to note that a four member class was not numerous enough to sustain a class action: *Hyde v. First & Merchants National Bank,* 41 F.R.D. 527 (W.D.V. 1967); 16 members were likewise insufficient: *DeMarco v. Edens,* 490 F. 2d 836 (2d Cir. 1968); while, 18 members were found to be so numerous that joinder was impracticable: *Cypress v. Newport News Gen. & Nonsectarian Hospital Ass'n,* 375 F. 2d 648 (4th Cir. 1967); and, class actions have been held maintainable in the following representative cases: *Fidelis Corp. v. Litton, Ind., Inc.,* 293 F. Supp. 164 (S.D.N.Y. 1968) (35 members); *Tisa v. Potofsky,* 90 F. Supp. 175 (S.D.N.Y. 1950) (50 members); *Swanson v. American Consumer Ind., Inc.,* 415 F. 2d 1326 (7th Cir. 1969) (151 members); *Berman v. Narragansett Racing Ass'n.* 48 F.R.D 333 (D.C.R.I. 1969) (5,000 members).

financial statements were issued and circulated. Therefore, the group represented cannot be called 'amorphous', . . . and the failure to state the exact number in the class does not preclude the maintenance of a class action." All that is necessary is that the class be defined with "some precision". *Fischer v. Kletz,* 41 F.R.D. 377, 384 (S.D.N.Y. 1966).[11]

In addition to the necessity of defining the class "with some precision", the court's determination of the practicability of joinder will require consideration of several factors: a showing that a class, whose bounds are precisely drawn, exists; whether parties affected are within the jurisdiction of the court; the ability of individual claimants to institute separate actions, dependent on such considerations as the small amount of the individuals' claims and their failure to realize the existence of a cause of action. See, Wright and Miller, 7 *Federal Practice and Procedure,* §1762; Donelan, Prerequisites to a Class Action Under New Rule 23, 10 B.C. Ind. & Com. L. Rev. 526, 531 (1969).[12]

In the instant case, the appellant identified her class as "those" individuals in the Commonwealth of Pennsylvania whose medical payments coverage has been diluted [either by deducting the payment due from the amount of the uninsured motorist award, or by failing to pay the medical expenses under the medical payments provision of its policy at all, subsequent

---

[11] Where the size of the class is not precisely drawn, the court should take into consideration the practical inability of the class representative to identify individual class members, where the defendant is in control of and refuses to provide the names and addresses of the class members. *Herbst v. Able,* 47 F.R.D. 11 (S.D. N.Y. 1969) ; *Mullen v. Mullen,* 14 F.R.D. 142 (D. Alaska 1953).

[12] It has been said that the entire "historic mission" of the class action is to take "care of the smaller guy". Frankel, Amended Rule 23 from a Judge's Point of View, 32 Antitrust L.J. 295, 299 (1966).

to the uninsured motorist award] . . . wherein the Statute of Limitations, six (6) years, has not barred recovery. Plaintiff is unable to state the exact number of the class without discovery of defendant's books and records, but avers on information and belief that the class exceeds five hundred members." In an effort to identify the class with greater precision, the appellant served interrogatories upon Allstate, requesting the names and addresses of policyholders who within the past 6 years had "received uninsured motorists awards and who were covered by Defendant's policies containing automobile medical payments insurance provisions at the time of said uninsured motorists awards." Allstate refused to supply this information, and a motion for sanctions was before the lower court at the time summary judgment was entered dismissing the class suit.

In light of the above discussion, it appears that, at least on its face, appellant's Complaint described "with some precision" the class size demonstrating the "impracticability" of joinder. Certainly, in the 67 counties of this Commonwealth, and with the pervasiveness of Allstate offices throughout the state, it can reasonably be assumed that a large number of policyholders fits the description outlined in the appellant's Complaint. Furthermore, other factors, such as the possible lack of financial position or lack of knowledge that a cause of action exists, likewise are present.[13]

---

[13] One of the purposes of a class action is to obtain injunctive or declaratory relief with respect to the class as a whole. See, F.R.C.P. 23(b)(2), as amended 1966. The fact that appellant herein seeks "money damages", in addition to a declaration that she and the other class members are entitled to medical payments coverage despite an uninsured motorists award, should not preclude the maintenance of a class bill. *Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc.*, 285 F. Supp. 714 (N.D. Ill. 1968); Sabbey, Rule 23; Categories of Subsection (B), 10 Boston College Ind. & Comm. L. Rev. 539, 543 (1969).

## 2. Common Questions of Law or Fact

While Pa. R.C.P. 2230 does not specifically require that there be "questions of law or fact common to the class" [as is required in F.R.C.P. 23(a)(2)], federal precedent and, at least one Pennsylvania case requires a showing of "commonality". In *Oas et al. v. Commonwealth*, 8 Commonwealth Ct. 118, 126 (1973), our Commonwealth Court declared that in order for a class action to be maintained "there must be a cause, right or privilege common to all within the class so that the named plaintiffs can allege they represent a class similarly situated." In holding that this requirement had to be met, the Court determined that the requirement of Pa. R.C.P. 2230 that the person[s] suing on behalf of the class "adequately represent the interest of all" encompasses the need to show "commonality".[14]

In the federal cases, where there exists neither an overwhelming need to prevent inconsistent adjudications nor an appropriate case for injunctive or declaratory relief where the group is denied a right, and

---

[14] The federal cases have given F.R.C.P. 23(a)(2) permissive application often making the mere statement that "undoubtedly" and "certainly" common questions existed. *Rosado v. Wyman*, 322 F. Supp. 1173, 1192 (E.D.N.Y. 1970), affirmed on other grounds 437 F. 2d 619 (2d Cir. 1970), *cert. den.* 397 U.S. 397; *Zeigler v. Gibralter Life Ins. Co.*, 43 F.R.D. 169, 172 (D.S.D. 1967). Because of the other subdivisions of Rule 23, which are addressed to "commonality", this section has been viewed as somewhat superfluous. *Vernon J. Rockler & Co. v. Graphic Enterprises, Inc.*, 52 F.R.D. 335, 340 (D.C. Minn. 1971). Both F.R.C.P. 23(b)(1)(A)(B) (identifying a proper class suit as one which promotes uniformity and avoids inconsistent adjudications) and (23b) (3) (Requiring that "questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members", see discussion *supra*) either of which if satisfied permit the maintenance of a class action, provide the policy considerations and extent of the requirement of "commonality". See also, *Eisen v. Carlisle & Jacquelin*, 391 F. 2d 555 (2d Cir. 1968).

where the only bond among the members is "a common legal grievance",[15] a class action may be maintained under subsection 23(b)(3).[16] Under this subsection, it is not necessary that all questions of fact or law coincide, but only that they "predominate" over those issues affecting only individual members. *Like v. Carter*, 448 F. 2d 798 (8th Cir. 1971); *Katz v. Carte Blanche Corp.*, 52 F.R.D. 510 (W.D. Pa. 1971). The fact that certain questions peculiar to the individual claimants will remain does not bar class relief. There must be, as one court put it, a "common nucleus of operative facts." *Eisen v. Carlisle & Jacquelin, supra.* But, as one commentary noted: "It is broadly implicit that a single determination by representative parties alone cannot in itself decide the claims or defenses of all class members; *it is assumed that individual questions peculiar to individual class members, but overweighed by the common questions, will or may remain after the common questions have been finally determined.*" (Emphasis added.) Frankel, Some Preliminary Observations Concerning Civil Rule 23, 43 F.R.D. 39, 43 (1967).

From a reading of F.R.C.P. 23 in its entirety, and from the cases deriving both from the original and the revised rule, an action based solely on "common ques-

---

[15] *Bennett v. Gravelle*, 323 F. Supp. 203, 218 (D.C. Md. 1971).

[16] Under this subsection, in the federal courts, an action lies even though the suit does not qualify under subsections (b)(1) and (b)(2). The difference in effect is critical. Under (1) and (2) all class members are bound by the judgment of the court. Under (b)(3), only those members who have received adequate notice of the proceeding and who have not "opted out" are bound. It is because these class members are loosely bound that the elaborate procedures and policy considerations found in F.R.C.P. 23 apply. It is within this narrow group of class actions [those which satisfy *only* (b)(3)] that the court may exercise the discretion of weighing the action against such considerations as venue, other pending individual actions, court efficacy and managability.

tions of law or fact" may be weighed against considerations of judicial economy and efficient administration. It may be difficult to set forth an exact formula by which cases should be determined, and it would better serve our judicial process if we leave such a balancing test to the trial courts on an *ad hoc* basis. Nevertheless, judicial economy and convenience should never supplant a common claim brought on behalf of a large number of class members which, if dismissed, would force a multiplicity of individual actions or frustrate small claimants from redressing a wrong committed by the opposing party. The entire purpose of a class action is to avoid such multitudinous litigation in separate and widespread actions and to protect the interests of the "little guy". It is probably for this very reason that many federal courts have sustained a (b)(3) class suit where the interested parties are quite numerous and the number of individual actions would be large [(a)(1)], especially where the claims are small. See, e.g., *State of Illinois v. Harper & Row Publishers, Inc.*, 301 F. Supp. 484 (D.C. Ill. 1969); *Weiss v. Tenney Corp.*, 47 F.R.D. 283, 291 (S.D. N.Y. 1969), and, generally, Wright & Miller, 7 *Federal Practice and Procedure*, §1779.

Class actions under Pa. R.C.P. 2230 require "commonality", and the more patent the need for arriving at a uniform result (especially where injunctive relief or declaratory relief is appropriate) and the more numerous the class members, the greater the need exists to sustain a class action despite any inconvenience to the trial court in either time, expense or effort.

In the instant case, the class of persons identified by the appellant presents the common questions of law and fact to the class as a whole. Appellant purports to represent all those Allstate policyholders who within the last six years received uninsured motorist awards, and who were denied recovery under the medi-

cal payments provision of their policy. Certainly, common questions of fact revolve around the manner in which the policyholders were paid, whether the dilution of their recovery was the result of a reduced award by an arbitration panel or Allstate's failure to pay after the award was rendered. The common question of law is whether this class of policyholders is entitled to the relief prayed for, i.e., whether a party who obtains satisfaction under the uninsured motorists provisions of his policy may nevertheless recover his medical expenses under the medical payments provision of his policy. The fact that individual questions of coverage, reasonableness of expenses, causation of injury, and extent of release, could affect the amount of recovery on individual claims would not defeat the class suit. See discussion, *supra*.

Furthermore, the great number of potential class members and the small amount of individuals' claims would militate against separate actions. The instant case presents the appropriate situation where declaratory relief, affecting all the potential claimants and the party defendant, should be available to the class. The considerations of the lower court articulated in its opinion may not, at this preliminary stage, outweigh the need for class relief.

### 3. Adequacy of Representation

Both Pa. R.C.P. 2230 and F.R.C.P. 23 expressly provide that a prerequisite to a class action is that the party or parties bringing the action on behalf of the class "adequately represent the interests of all."[17] Construing the federal rule, a case from the Northern

---

[17] It is interesting to note that F.R.C.P. 23(a)(3), requiring that "the claims or defenses of the representative parties are typical of the claims or defenses of the class", has been suggested as another method of insuring adequate representation of the class interests. Comment, 38 So. Cal. L. Rev. 80, 95 (1965). A number of courts have said that this subsection may be equated with the

District of Illinois, citing *Eisen, supra,* concisely sets out the requirements of this subsection: "The named plaintiffs are represented by competent and experienced counsel, and there is no likelihood of a collusive suit or that named plaintiffs have interests antagonistic to the interests of other [class members] they purport to represent." *Contract Buyers League v. F. & F. Investment,* 48 F.R.D. 7, 10 (N.D. Ill. 1969).

In Pennsylvania, a class action will be dismissed where the plaintiff's "interest is adverse to the interests" of the other class members, and that it will be maintained only where "the relief sought by him [the class representative] is in its nature beneficial to all those whom he undertakes to represent." *Penn Galvanizing Co. v. Philadelphia,* 388 Pa. 370, 379, 130 A. 2d 511, 516 (1957); *Oas v. Commonwealth, supra* at 126.

No contention is made that counsel for the appellant herein is not competent to represent the class. It has generally been held that "[u]ntil the contrary is demonstrated, courts will assume that members of the bar are skilled in their profession." *Dolgow v. Anderson, supra* at 496. The interests of all the class members appear to be mutual, and there is no showing of "antagonistic" interests. Certainly, a determination as to the right of policyholders to medical expenses under the medical payments provision of their policies, irrespective of an uninsured motorists award, will be "beneficial" to all the class members. Finally, it cannot be said that there exists any collusion between the litigants to preclude representation of the class. There is every indication that the appellant, as class representative, has and will continue to vigorously litigate the matter to "benefit" all class members.

---

(a) (2) requirement that common questions exist. See, e.g., *American Airlines, Inc. v. Transport Workers Union,* 44 F.R.D. 47 (N.D. Okla. 1968).

The lower court emphasized that the appellant is not an adequate representative of the suit because she was offered and rejected a settlement of her individual claim with Allstate.[18]

Under Pa. R.C.P. 2230(b) [and F.R.C.P. 23(e)], a class action shall not be dismissed, discontinued, or compromised nor "shall a voluntary nonsuit be entered therein without the approval of the court in which the action is pending." In the instant case, the appellant, after filing the class suit, could not settle her individual claim with Allstate, thereby prejudicing the other class members on whose behalf the class action was brought. Appellant not only acted properly in refusing settlement, but was bound to do so. *Kahan v. Rosentiel*, 424 F. 2d 161 (3d Cir. 1970). The *bona fide* nature of her representation may not be attacked for such failure to settle. The trial court pointed to the proximity of time between her demand for payment of medical expenses, the institution of suit, and the refusal of settlement. The court felt that such proximity evidenced lack of good faith and the in terrorem effect of sustaining the class bill. The factual history of the case, however, reveals the contrary to be true. See f.n. 4, *supra*.

There is simply nothing in the case from which the trial court could have concluded that the class action should be dismissed for lack of adequate representation.

### THE TRIAL COURT AS SUPERVISOR

The federal courts have given liberal application to F.R.C.P. 23 to permit class actions wherever possi-

---

[18] Whether or not the court believes that a party has failed to state a cause of action or whether said party will ultimately prevail is irrelevant and may not be considered in determining the maintenance of a class action. *Kaham v. Rosentiel, infra* at 169.

ble.[19]  It is not surprising, therefore, to find that the institution of a class action suit by means of a well-pleaded complaint is presumed to be valid, "until there is a full determination that the class action is not proper." *Kahan v. Rosentiel, supra* at 169; *Gaddis v. Wyman,* 304 F. Supp. 713, 715 (S.D. N.Y. 1969). Following the federal practice, Pa. R.C.P. 2230 should likewise yield liberal construction and application. While the court may, in appropriate circumstances, weigh the maintainability of the class action against such considerations as judicial economy and efficient administration, such a balancing test should not frustrate and devitalize a procedural tool by which a group, too numerous to make joinder practicable, seeks to "redress a common grievance". This social purpose and the precedential importance of the class action should be paramount to the convenience of our judiciary. The existence of a well-pleaded complaint setting forth the class action elements "with some precision" should be presumed valid, until proven otherwise. *Penn Galvanizing, supra.*

---

[19] It is interesting to note that the Supreme Court of the United States, following the policy enunciated in *Snyder v. Harris,* 394 U. S. 332 (1969), has recently held that class members could not aggregate small claims to meet the jurisdictional amount of $10,000 in diversity class suits, but that *each* class member had to meet the minimum jurisdictional amount. As with any divestiture of subject matter jurisdiction, the clear intent is to leave small claimants to redress their wrongs in the state courts. *Zahn v. International Paper Co.,* 94 S. Ct. 505, 512, 38 L. Ed. 2d 511 (1973). In suits invoking federal question jurisdiction, where no jurisdictional amount is specified, the Supreme Court has continued the liberal policy of sustaining class action suits. *Cf., American Pipe and Construction Co. v. Utah,* 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974) (anti-trust action). The divestiture of diversity jurisdiction, and the attendant probable increase in state suits increases the need for specific guidelines to the Bench and Bar.

In all class actions, the trial court has an important and broad supervisory function. It may, in its sound discretion, compel the opposing party to release records to identify class members; determine the scope and extent of discovery; make orders sustaining the class conditional pending further proceedings;[20] direct the means and extent of notice to class members;[21] strike out portions of the Complaint unsupported by fact or law, or dismiss the class in its entirety at a later stage;[22] create subclasses of parties having divergent interests and positions;[23] and, carry out other judicial functions in the course of litigation.[24]

In the instant case, the court acted on three motions for summary judgment: (1) Allstate's motion to dismiss the class action; (2) appellant's motion to certify the class and determine her as the "adequate representative" of the class; and, (3) if appellant's class should be dismissed, appellant's motion to enter judgment in favor of the amount representing her individual claim. The trial court dismissed the class

---

[20] If after discovery or at some later stage in the proceedings, it appears that either "numerosity" or some other prerequisite is not satisfied, the court may dismiss the class suit. Orders declaring the maintainability of a class action at a preliminary stage may be made conditional, subject to modification, the creation of subclasses or, dismissal. See, F.R.C.P. 23(c)(1) and (c)(4) and subsection (d).

[21] In notifying class members of the pendency of the class action, the court must be careful to insure that the means employed satisfies at least the minimal requirements of due process. As Pa. R.C.P. 2230 is silent on the notice requirements, such notice as the court may direct, except in the abuse of its discretion, or where due process is violated, shall be adequate.

[22] Oas v. Commonwealth, 8 Commonwealth Ct. 118 (1973); F.R.C.P. 23(d).

[23] See, e.g., F.R.C.P. 2(3c)(4).

[24] This includes the inclusion of other class members as intervenors into the class action. Said orders "may be altered or amended as may be desirable from time to time." F.R.C.P. 23(d).

action, and found in favor of the individual plaintiff in the full amount (in effect, deciding the question of law in the class action itself).

I believe appellant's Complaint satisfied the prerequisites of a class action. The lower court should enter, at the very least, a conditional order sustaining the class action and certifying the appellant as the "adequate representative" of the class.[25] If later proceedings disclose that the preliminary order was based on assumptions or conclusions not supported by the record, dismissal would be proper.

The order and judgment of the court below dismissing the class action should be reversed, and the cause remanded to the court below for proceedings consistent with this opinion.

SPAETH, J., joins in this opinion.

---

DISSENTING OPINION BY SPAETH, J.:

I join in the opinion by Judge HOFFMAN but should like to add an observation by way of emphasis.

Since the United States Supreme Court has decided that in a class action brought under Fed. R. Civ. Pr. 23 individual claims may not be aggregated so as to reach the $10,000 amount required for diversity jurisdiction, *Snyder v. Harris*, 394 U.S. 332 (1969), it may be expected that State courts will have to decide an increasingly large number of class actions. It is therefore particularly important that the bar be informed of the criteria that this court will apply.

There can be no question in my judgment that Judge HOFFMAN is correct in indicating that those

---

[25] In addition, Allstate should be compelled to provide the appellant with the names and addresses of potential class members for a number of reasons: so that numerosity will be established; so that adequate notice of the class action may be given class members; and, so that, in the event of successful litigation, the members will be able to benefit from the judgment of the court.

criteria will in many cases be those that have in the past been applied by the Federal courts. The point I wish to emphasize is that we are not bound by those criteria. Our rule is more general and thus less restrictive than the Federal rule. Where we find the cases decided under the Federal rule persuasive, as they are in the present case, we may follow them, but if we do not find them persuasive, we are free to go in a different direction. Thus I would urge the bar not simply to cite Federal decisions, and the few Pennsylvania decisions, but to approach the matter with a fresh point of view. The experience with class actions in the Federal courts has been difficult. Hopefully we may benefit from it, and do better.