**Buchanan v. Brentwood Federal S. & L. Assn.**

*Michael P. Malakoff* and *Herbert Sheinberg,* for plaintiffs.

*Frank R. Bolte, Alexander Black, Alexander C. Sherrard, William M. Hoffman, David B. Fawcett, Jr., Daniel P. Stefko, Harold Goldman, E. D. Hollinshead, Jr., W. Walter Braham, Jr., J. Tomlinson Fort, James J. Restivo, Jr., John M. Means, David Watson,* and *Judah I. Labovitz,* for defendants.

# I. INTRODUCTORY STATEMENT

LARSON, *J.*, March 11, 1975—This case is before the court on preliminary objections filed by defendant, Federal National Mortgage Association (hereinafter "FNMA") and on plaintiff's preliminary objections to FNMA's preliminary objections.

The 29 individual plaintiffs in this case filed this class action, alleging that they had borrowed money from various defendant lending institutions, had given mortgages on real property as security for the loans, and had executed personal bonds or notes accompanying the mortgages. Defendant, FNMA, is an assignee of a mortgage given by plaintiffs, Roger and Dorothy Buchanan, to Abbott Mortgage Corporation of Pittsburgh. Plaintiffs seek to challenge, on several legal theories, defendants practice of requiring monthly installments of the annual taxes and insurance premiums for the mortgaged properties in addition to payments of principal and interest, and using these installments for defendants' own pecuniary gain.

Plaintiffs have alleged that defendants hold these sums in a trust or in fiduciary capacity and, therefore, are not entitled to utilize the sums as general funds and retain the earnings therefrom. Plaintiffs seek an accounting of all earnings thus derived. Alternatively, plaintiffs seek the imposition of a constructive trust on those profits, either on the theory that defendants are unjustly enriched by retention of earnings, that defendants obtained those earnings by breach of fiduciary duties as agents, or that the earnings were obtained by virtue of a confidential relationship arising from the dominant position of the lending institutions with respect to the mortgagors. Finally, plaintiffs have

alleged that defendants abandoned the prior practice of capitalizing the monthly payments of real estate taxes and insurance premiums in breach of an implied contract to continue the practice for the life of existing mortgages.

Procedurally, this litigation has been complex. The instant action was filed by 18 named plaintiffs on December 7, 1971. Defendant, FNMA, was one of eight originally named defendants. The complaint was originally amended in April 1972, and a second amended complaint was filed on May 1, 1972.[1] The amended complaint added 11 named plaintiffs and 24 defendants, as well as "all other similarly situated banking institutions and savings and loan associations" in the Pittsburgh area. The second amended complaint alleged the cause of action for breach of contract.

On January 31, 1972, preliminary objections were filed by seven of the eight originally named defendants. Preliminary objections in the nature of a demurrer to the amended complaint were filed by 27 of the defendants on May 12, 1972, and to the second amended complaint on May 19, 1972. FNMA did not join in the preliminary objections of the other defendants and filed no preliminary objections or any other responsive pleadings to plaintiffs' complaints.

On March 6, 1972, the joint demurrer was sustained with respect to all of plaintiffs' causes of action and the complaints were dismissed with respect to all defendants, including FNMA. Plaintiffs appealed the sustaining of the demurrers and, on

---

1. A third amended complaint was filed after the Supreme Court's decision in this case, solely for the purpose of including on the record the mortgages and mortgage notes of the plaintiffs Kisslinger and Stavrides.

April 23, 1974, the Supreme Court reversed the dismissal of the complaints with respect to all plaintiffs ' State law causes of action.[2]

Defendant, FNMA, filed the preliminary objections now before this court in June, 1974. In its preliminary objections, FNMA contends that the parties are misjoined, demurs (on the ground of lack of standing to sue) to the right of any plaintiff except the Buchanans to maintain the present action against FNMA, and moves to strike the plaintiff class action allegations of the complaint as well as the defendant class action allegations of the complaint. FNMA also demurs to the Buchanan complaint, contending that since FNMA, assignee of the Buchanan mortgage, had no direct dealings with plaintiffs, there could be no trust relationship or implied contract.

Plaintiffs have filed preliminary objections to FNMA's preliminary objections alleging that, under Pa. R.C.P. 1026 FNMA's preliminary objections were not timely. Plaintiffs' contentions have merit.

## II. TIMELINESS OF FNMA'S PRELIMINARY OBJECTIONS

Pa. R.C.P. 1026 requires that preliminary objections be filed within 20 days of service of the complaint. Here, plaintiffs' original complaint was filed on December 7, 1971, and subsequently amended on April 5, 1972, and May 11, 1972. All defendants, except FNMA and the national banks, filed preliminary objections on January 31, 1972, May 12,

---

2. The dismissal of plaintiffs' claims of violation of the Federal Truth-in-Lending Act was affirmed.

1972, and May 19, 1972, respectively. Plaintiffs' complaints were dismissed as to all defendants on March 6, 1973. An appeal was taken in which FNMA was named as an appellee, and FNMA actively participated in the appeal. At no time during the course of the appellate proceedings did FNMA attempt to disavow the sustaining of demurrers in its behalf. FNMA's preliminary objections, filed over 30 months after this action was initiated and after the dismissal of plaintiffs' complaint, was reversed by the Supreme Court, must be held to be untimely.

FNMA, however, argues that plaintiffs had agreed to postpone the time for FNMA to file a responsive pleading, pointing to a letter dated May 2, 1972, from its counsel to plaintiffs' counsel. That letter indicates, however, that any postponement was premised on this case being held in abeyance while a companion Federal court suit proceeded. In this connection, it must be noted that plaintiffs' motion to hold this case in abeyance was denied on June 2, 1972, and plaintiffs' motion to discontinue this case was denied on June 26, 1972. Clearly, the court indicated that the expected postponement of proceedings in this case, on which the agreed-upon extension of time to plead was based, was not to be granted. The purported extension of time to plead cannot justify FNMA's attempt to obtain a second opportunity to file preliminary objections at this late date.

FNMA's conduct and the history of this litigation require us to hold FNMA's preliminary objections were not timely filed.

However, while we do not condone such untimeliness, we decline to dismiss FNMA's preliminary objections on such a narrow technical ground, es-

pecially since the same issues could be properly raised by FNMA after the pleadings are closed by a motion for judgment on the pleadings under Rule 1034. As noted in Peabody v. Carr, 316 Pa. 413, 416 (1934), "we will not foreclose a cause of action for want of skill in the pleader." The converse of this principal of law is equally true. A defense should not be initially denied where the efficient conduct and the administration of the case dictates that we consider an untimely defense. A class action, especially one involving multiple defendants, as here, is such a case. Local Rule 126 mandates that: "The rules shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any such action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties."

We, therefore, will address ourselves to the merits of FNMA's preliminary objections.

## III.  JOINDER

Plaintiffs seek to maintain this action as a class action on behalf of one or more classes of mortgagors, pursuant to Rule 2230. Thus, Rule 2230—not Rule 2229, the permissive joinder rule—governs. FNMA, however, argues that the parties, both plaintiffs and defendants, are misjoined under Rule 2229.[3]

---

3.  The comments to Rule 2229 provide that:

"This subdivision permits persons to join as plaintiffs when their respective causes of action have arisen from a common set of facts and a question of law or fact is common to the determination of all causes of action. *This joinder is permitted*

Rule 2229(a) allows the permissive joining of plaintiffs with several or separate causes of action "whenever their respective claims arise from a common factual background and the determination of all the claims will involve a common question of law or fact.": 3 Goodrich-Amram Proc. Rules Service §2229(a)-1 at page 38. The only limitations on joinder are the requirements that the claims arise out of the same transaction, occurrence or series of transactions or occurrences and that there might be a common question of law or fact affecting the rights to relief. Id. at §2229(a)-5, page 47.

Permissive joinder of defendants is authorized by Rule 2229(b) on the same footing as joinder of plaintiffs: 2 Standard Pa. Prac., p. 388.

Although plaintiffs have entered into separate mortgage agreements, a "common factual background" is present. It is alleged that plaintiffs have all been required by defendants, including FNMA, to make the monthly payments of real estate taxes, and/or insurance premiums, in addition to installments of principal and interest on their mortgage loans. It is also alleged that all defendants, including FNMA, have engaged in the common practice of commingling the sums paid by plaintiffs for earnings derived from those sums.

The claims all arise out of a "series of transac-

---

*although the causes of action of the plaintiffs are* (1) several; (2) *separate or independent;* or (3) in the alternative.

"This subdivision makes a distinction between 'several' and 'separate' causes of action. *In the case of separate causes of action each cause of action is totally independent of the others. Thus where each of a number of persons makes an individual contract of employment with a contractor each person has a separate right and in the event of breach, each has a separate cause of action.*" (Emphasis supplied.)

tions or occurrences" within the meaning of Rule 2229, since all the claims arise out of transactions in which plaintiffs obtained mortgage loans with tax and/or insurance payments to be made monthly to the mortgagee or its assignee; payments were made on the required monthly basis; defendants failed to hold any sums paid in a trust or fiduciary capacity; and the earnings from those sums were retained by defendants as they were received.

Whether or not plaintiffs are entitled to relief herein also depends on the resolution of common questions of law or fact, e.g., whether defendants violated trust or fiduciary duties to plaintiffs by the utilization of sums paid to them to be applied only to plaintiffs' real estate taxes and insurance premiums; whether the defendants are unjustly enriched by retention of earnings derived from use of the tax and insurance escrows; and whether defendants breached any implied contract to continue the practice of capitalizing tax and insurance premium payments.

The policy behind permissive joinder of plaintiffs and defendants supports joinder in the instant case. Thus, it has been said:

". . . [J]oinder is determined upon the basis of trial convenience and the speedy determination of all claims arising out of a common factual background. In addition, it serves as a means of avoiding inconsistent verdicts at separate trials. The Rule abandons the common law principle that claims of several persons, although arising from the same or substantially the same facts and presenting similar questions, must be enforced in separate actions.": 3 Goodrich-Amram, supra, at §2229(a)-2, p. 42 (footnotes omitted).

And with respect to permissive joinder of defendants:

"[I]t is also predicated on administrative convenience and not on the form of the action or the nature of the cause of action. If the issues between the various parties may be conveniently tried and determined in one action, the joinder is desirable. Issues between various parties arising from a common factual background and involving common questions should ordinarily be determined in one action. Duplication of pleading and proof will be avoided and needless waste of money and time prevented." Id. at §2229(b)-2, p. 55 (footnotes omitted).

It should also be noted that this case is in equity. Joinder of plaintiffs and defendants has always been liberally applied in equity in order to avoid multiple suits, and promote the interest of the parties and convenience of the courts: 3 Goodrich-Amram, supra, §2229(b)-1, at p. 54. See also Universal Film Exchanges, Inc. v. Budco, Inc., 44 D. & C. 2d 695 (Bucks Co., 1968) (no complaint in equity is "multifarious" if there is a common point in the litigation, common facts and common questions; refusal to permit joinder of defendants would result in multiple separate actions and inconvenience for parties and the court). If any useful purpose would be served by requiring plaintiffs to file numerous individual actions or numerous separate class actions, it is not apparent to this court. If individual actions had been filed orginally, they would undoubtedly have been consolidated pursuant to Pa. R.C.P. 213(a).

Since plaintiffs bring the instant action pursuant to Pa. R.C.P. 2230, and since, even assuming Rule 2229 permissive joinder provisions apply, the re-

quirements of Rule 2229 are met and defendant's preliminary objections on the ground of misjoinder must be overruled.

## IV.  STANDING

FNMA contends, and plaintiffs have conceded in their memorandum opposing FNMA's preliminary objections, that, of the named plaintiffs, only the Buchanans have standing to prosecute this action against FNMA.

While it appears plaintiffs initially sought to prosecute this litigation as a single class action in which all plaintiffs, in effect, sought to litigate their claims against all defendants, they have suggested in their brief that their intention is now that the plaintiffs will represent separate classes of borrowers against the respective individual named lending institutions from which they obtained their loans. Such a procedure was suggested by the Supreme Court in its opinion in this case at 320 A.2d 117, 131 (1974). Therefore, no other named plaintiff is in reality asserting a cause of action against FNMA, and it does not appear to be necessary to resolve the privity issues which would otherwise exist.

## V.  ASSIGNMENT

FNMA has demurred to the complaint with respect to the Buchanans on the ground that FNMA, as assignee of the Buchanan mortgage, could not have entered into a trust relationship, a constructive trust relationship or an implied contract with the Buchanans.

The Buchanans did not obtain their mortgage

from FNMA but from the Abbott Mortgage Corporation of Pittsburgh (hereafter "Abbott"), which thereafter assigned the mortgage to FNMA. That mortgage explicitly provides that "the covenants herein contained shall bind [the] assigns of the parties hereto." FNMA is an assignee of the mortgage from Abbott and thus has the same rights and duties under the mortgage as Abbott, although FNMA never dealt directly with the Buchanans. In this case, as in McCune v. Goss, 377 Pa. 360, 364 (1954), it is a "well settled principle of law that the assignee of a mortgage takes it subject to all the equities and set-offs existing between the original parties."

If the moneys in issue here were paid to FNMA to be held in trust, even though the Buchanans may not have personally communicated this to FNMA, the assignee of the Buchanan mortgage, and even though FNMA may not previously have agreed to hold them in trust, the acceptance of those funds and the acceptance of the duty to pay them over to satisfy the Buchanans' obligations would prevent FNMA from now disclaiming its capacity as trustee. Similarly, if Abbott capitalized the Buchanan tax and insurance payments, if plaintiffs can establish an implied contract to continue the practice, assignment to FNMA would not terminate this provision of the mortgage.

A demurrer on the ground that no trust or constructive trust relationship or implied contract could exist because the Buchanans did not deal directly with FNMA must be overruled.

## VI. CLASS ACTION

Defendant FNMA contends that this action

should not proceed as a plaintiff class action or as a defendant class action.[4]

Pa. R.C.P. 2230 provides:

"(a) If persons constituting a class are so numerous as to make it impracticable to join all as parties, any one or more of them who will adequately represent the interest of all may sue or be sued on behalf of all, but the judgment entered in such action shall not impose personal liability upon anyone not a party thereto."

The above-quoted subdivision adopted the practice under former Pennsylvania Equity Rule 16 and the former F.R.C.P. 23(a). Former F.R.C.P. 23(a) and the current Rule 23(a) differ little if at all.[5] The primary purpose of Rule 2230 is "to avoid a multiplicity of lawsuits wherein common issues of fact or law are in question.": Alessandro v. State Farm

---

4. FNMA has specifically moved to strike all defendants class action allegations on the basis of the Supreme Court's opinion in this case. In light of that opinion, Buchanan, 320 A.2d at 131, it would seem the present case could not be maintained against unknown class defendants, and FNMA's motion to strike should be granted in this respect.

5. Original F.R.C.P. 23(a) provided, in pertinent part, as follows:

"(a) Representation. If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued. . . ." Amended F.R.C.P. 23(a) provides as follows:

"(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representatives on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class."

Mutual Automobile Insurance Co., July term, 1972, no. 3642 (C.P. Allegheny County, 1972), 22 Pitts.L.J. 65, as well as to enable the litigant with a small claim to join with others, and seek redress in the courts.

Recently, class actions have increased in this court. See, e.g., Hargrave v. Jim McKain Ford, Inc., October term, 1972, no. 96 (C.P. Allegheny County, 1972); Matthews v. Krebs and King Chrysler-Plymouth, Inc., 121 Pitts.L.J. 215 (C.P. Allegheny County, 1972); Alessandro v. State Farm Mutual Automobile Insruance Co., supra; Mayhugh v. Coon and Mellon National Bank and Trust Co., April term, 1972, no. 568 (C.P. Allegheny County, 1972), and Bell v. Beneficial Consumer Discount Co., 122 Pitts.L.J. 342 (1974). Significantly, in a case raising issues identical to those before this court, a class action has been certified by the Common Pleas Court of Philadelphia County. Piltzer v. International Federal Savings & Loan Association of Phila., October term, 1971, no. 3756 (Phila. Co.), appeal quashed, 456 Pa. 402, 319 A.2d 677 (1974).

There has been relatively little guidance, however, from the appellate courts of this Commonwealth: McMonagle v. Allstate Insurance Co., 227 Pa. Superior Ct. 205 (1974), affirmed January 27, 1975. In most, if not all, class action cases the Pennsylvania courts have looked to post-1966 Federal law. This practice of looking to the body of law developed by the Federal courts after the amendment of Rule 23 in 1966 was specifically approved by a majority of the members of the Superior Court in McMonagle v. Allstate Insurance Co., supra. See opinion of Jacobs, J., joined by Watkins, P.J., and the separate dissenting opinions of Spaeth, J., and Hoffman, J. For example, in McMonagle, the Su-

preme Court cited and quoted Judge Spaeth, as follows at page 236:

"[W]e are not bound by [the criteria that have in the past been applied by the Federal courts]. Our rule is more general and thus less restrictive than the Federal rule. Where we find cases decided under the Federal rule persuasive . . . we may follow them, but if we do not find them persuasive, we are free to go in a different direction. . . . The experience with class actions in the Federal courts has been difficult. Hopefully, we may benefit from it and do better."

It would appear from the opinions cited above and the class action rule itself that there are only two explicit prerequisites to maintaining a class action under Pa. R.C.P. 2230: (1) Numerosity so as to make joinder impracticable, and (2) adequacy of representation. The definition of the word "class," which itself implies some logical connection between its members, gives rise to a third prerequisite: common questions of law or fact. As noted in Matthews v. Krebs & King Chrysler-Plymouth, Inc., 121 Pitts.L.J. 216:

"To fail to allow actions to proceed as class actions where such common issues of fact or law are involved would create a situation that would place on the courts an almost unbearable burden of hearing the same case over and over again for each individual plaintiff unnecessarily taking the time of the Court and making it nearly impossible to properly protect the consumer from fraud."

Any starting point for determining whether the prerequisites of Rule 2230 are met must begin with Buchanan v. Brentwood Federal Savings & Loan Association, 457 Pa. 135, 320 A.2d 117 (1974). There, the Supreme Court set down the criteria this

court should follow in determining whether this action should proceed as a class, at page 160:

"If the present action is to continue as a plaintiff class action, the court on remand must limit each class of plaintiffs to those holding mortgage and personal bond agreements having monthly tax payment clauses that do not differ materially. As to this limited group, two further questions must be answered. It must be determined whether the group of mortgagors who hold such instruments 'are so numerous as to make impracticable to join all as parties.' And the trial court must be satisfied that the named plaintiffs 'will adequately represent the interest of all.' These questions are called to the attention of the trial court so that a record adequate for determination there as well as for appellate review may be established."

The Supreme Court explicitly noted, at page 160, that:

"[T]he resolution of these issues by the trial court may possibly result in a number of separate class actions, each appropriately confined."

*A. Numerosity.*

On the basis of the Supreme Court's opinion, it would appear that each class should be limited to mortgagors with agreements at each institution, assuming discovery establishes that similar mortgage agreements were used within each institution.

We are here concerned with whether there are a sufficient number of mortgagors with mortgages which are substantially identical to the Buchanan's mortgage and which were subsequently assigned to FNMA, to satisfy the prerequisite that joinder be impracticable. The Supreme Court has directed this court to prepare an "adequate record."

The exact number of mortgages similar to that assigned FNMA from Abbott are not in evidence at this preliminary stage. Presumably, this information is obtainable by discovery from FNMA's records. The mere fact that named plaintiffs cannot at this time determine the precise number of class plaintiffs does not require the dismissal of their class action: Alessandro v. State Farm Mutual Automobile Insurance Co., supra, and the cases cited therein.

*B. Adequacy of Representation.*

The Supreme Court in Buchanan has directed that we determine whether the named plaintiffs "will adequately represent the interest of all.": 457 Pa. at 160, 320 A.2d at 131.

The two basic tests for making this determination appear to be whether the parties' attorneys are generally able to conduct this litigation, and whether the named plaintiffs have interests antagonistic to those of the class members.

The named plaintiffs and their attorneys have vigorously pursued this action. Each named and class plaintiff was allegedly subjected to the same practices complained of herein. The named plaintiffs and class plaintiffs all have an identical interest in obtaining an accounting for profits made from defendants' use of their monthly tax and insurance payments. Defendant argues in its brief that the failure to plead special knowledge of the named plaintiffs as to the mortgage lending practices requires a finding of inadequacy of the representative plaintiffs. We cannot agree. The knowledge of the named plaintiffs of the practice complained of is irrelevant. Often, those persons with the least knowledge have the greatest need for the class action. It is the issues framed by a named

plaintiff, not his personal knowledge, that determines adequacy of representation.

This court finds that the adequacy of representation prerequisites of Pa. R.C.P. 2230 has been satisfied.

*C. Common Questions of Law or Fact.*

The named plaintiffs are proceeding on three separate legal theories: (1) a trust theory; (2) a constructive trust theory; and (3) a breach of contract theory. To convince the "conscience of equity" that a constructive trust should be imposed, plaintiffs have alleged that: (a) Defendants stand in a confidential relationship with their mortgagors, or alternatively, (b) defendants were acting as plaintiffs' agents, and/or alternatively (c) that defendants were unjustly enriched. Each of these legal theories presents common questions of law and fact that satisfy the prerequisites of Rule 2230.

*1. Trust:*

No particular words or conduct is necessary to create a trust. "The question is whether *the agreements* taken as a whole evidence an intent by appellants 'to impose . . . upon a transferee of the property equity duties to deal with the property for the benefit of another person.'": Buchanan, 457 Pa. at 143-44, 320 A.2d at 122. "[T]he resolution of questions of law that are advanced by the parties depends upon the precise language used in the parties' *agreements.*" Id. at 457 Pa. at 148, 320 A.2d 125, n. 12. "[T]he legal effect of the parties' undertaking must be viewed by viewing an *agreement* in its entirety." (footnote omitted): 457 Pa. at 150, 320 A.2d at 125-26 (Emphasis supplied.)

Thus, this court can determine whether a trust relationship exists or not by examining the agreements entered into by the parties.

FNMA, however, contends that this court, if it holds that this case can proceed as a class action, will be required to review thousands of agreements. We note that the Supreme Court in Buchanan stated: "it appears that the court did not consider each agreement *individually*, this alone requires reversal.": 457 Pa. at 144, 320 A.2d 123, n. 10. And the Supreme Court stated: "[T]his court cannot say with assurance that the trial court considered each mortgage and bond agreement *individually* . . .": 457 Pa. at 148, 320 A.2d 125. (Emphasis supplied.)

Later on in the opinion, however, the Supereme Court made clear that the trial court was not required, as FNMA contends, to examine the mortgage documents of each individual class member. The Supreme Court stated: "Each class or type of agreement must be considered separately because these variations may be crucial to the correct assessment of what relationship the parties contemplated.": 457 Pa. at 148, 320 A.2d 125. Therefore, this court need not examine each individual mortgage, but may consider each "class or type of agreement" where there are no substantial differences in the material language used. It would appear that since "custom made" mortgage agreements are the exception to the general rule only "subclasses" of substantially identical mortgages, within each class, will have to be considered by the trial court.

Plaintiffs may, therefore, prove their trust theory from the mortgage agreements themselves. The interpretation to be given to groups of substantially identical mortgages presents common questions of law, that satisfy the commonality requirement of Rule 2230.

This being so, all plaintiffs need prove to estab-

lish a trust is that defendants received their monthly payments for the specific purpose of paying plaintiffs' taxes and/or insurance. As noted by the Supreme Court in Vosburgh's Estate, 279 Pa. 329, 332 (1924), cited and quoted with approval in Buchanan at 457 Pa. at 144, 320 A.2d 123: "[E]very person who receives money to be paid to another or to be applied to a particular purpose is a trustee." Or, as stated in Buchanan: "[Plaintiffs] must be afforded the opportunity to prove that money was paid to a mortgage lending institution for the specific purpose of satisfying tax and other obligations." (footnote omitted): 457 Pa. at 144, 320 A.2d at 123.[6]

It thus appears that the purpose for which defendants received the mortgagors' payments can be inferred from the mortgage agreements themselves and from evidence derived from the various lending institutions. Evidence as to the subjective intent of individual mortgagors is not necessary.

We, therefore, conclude that the issues raised by plaintiffs' claim of breach of trust can be resolved by determining common questions of law and fact.

2. *Constructive Trust:*

A constructive trust is not a trust, but an equitable remedy used to correct societal ills. When prop-

---

6. Defendants' primary defense, that only a debtor-creditor relationship was established, was rejected by the Supreme Court. The Supreme Court explicitly noted that "the mortgagees assumed *no* obligation to be responsible for the payment of the mortgagors' taxes. Rather, according to the contracts, the liability for payment of all taxes and assessments was at all times the mortgagor's." Id. at page 125. The failure of the mortgagees to pay interest also indicates that the relationship between the parties is not one of debtor-creditor. Id. at page 126, n. 14.

erty has been acquired in a manner inconsistent with "the conscience of equity," equity converts the holder into a trustee and requires him to relinquish the property. Three theories have been advanced by plaintiffs to convince this court that equity mandates that a constructive trust be imposed on the profits earned by investment of plaintiffs' monthly tax and insurance payments.

(a) *Confidential Relationship*

Plaintiffs first assert that a mortgagor and mortgagee stand in a confidential relationship to each other. A confidential relationship may be established by evidence of "unfairness and inequality in bargaining or dealings between parties.": Buchanan, 457 Pa. at 153, 320 A.2d at 127. "As evidence of unequal bargaining position, lack of competition is probative. A party's bargaining hand is strengthened if all those who sell (or buy) substantially the same product or goods do so on substantially identical terms": Buchanan, 457 Pa. at 154, n. 19, 320 A.2d at 128, n. 19.

From this language, we conclude that plaintiffs may prove the existence of a confidential relationship by evidence that the lending institutions, including defendants, who control a sufficiently large part of the mortgage market, offer loans only on substantially identical terms. If substantially all lenders engage in the same paractice of making mortgage loans only where they will receive additional earnings by use of the mortgagors' tax and insurance premium payments, so that plaintiffs had no realistic alternative, mortgagors are clearly not in an equal bargaining position with defendants Common questions of fact exist as to whether alternatives were available from defendants or other lending institutions, the numbers of

loans available on alternative terms, and whether any significant portion of the mortgage loans made were available on other terms .

(b) *Agency*

Plaintiffs, alternatively, assert that the mortgagor and mortgagee stand in an agency relationship with each other and that, as agents, defendants may not use their mortgagors' money for their own advantage. The Supreme Court in Buchanan held that if plaintiffs "prove on remand that the agreement contemplated an agency relation, then they may prevail on this theory.": (footnote omitted), 457 Pa. at 154, 320 A.2d at 128.

To prevail on their agency theory, plaintiffs must prove consent of the defendants to act on plaintiffs' behalf in connection with these monthly payments, and subject to plaintiffs' control: Restatement (2d) Agency §388 (1958). "[T]he parties may offer evidence to prove that their agreement did (or did not) contemplate the exercise of certain powers.": Buchanan, 457 Pa. at 154, 320 A.2d at 128, n. 21.

It does not appear to this court that the issue framed by the Supreme Court require resolution with respect to each individual mortgagor-mortgagee relationship. If plaintiffs establish that classes of mortgagors entered into substantially identical agreements and that pursuant to those agreements the respective defendants undertook to perform the alleged tax and insurance escrow services on behalf of the classes of mortgagors, the presence or absence of an agency relationship could be inferred from examining the common language of the mortgage agreements and the parties' manifested intent. Class-wide treatment of the questions that arise from plaintiffs' agency theory

would be consistent with the common questions of law or fact requirement of Rule 2230.

(c) *Unjust Enrichment*

Finally, in support of their constructive trust theory, plaintiffs allege that "the ends of public policy and substantial justice demand at a constructive trust be impressed on the earnings": Buchanan, 457 Pa. at 155, 320 A.2d at 128. One important factual question that must be resolved in determining whether plaintiffs should prevail on this theory is the amount of the profits earned by defendants. In considering whether retention of the earnings is unjust, this Court should again consider evidence of unequal bargaining position and also the fact that any earnings defendants receive from the challenged practice are in addition to the interest rates which the legislature has deemed "just" in enacting the usury laws. In any event, it would appear that the questions raised are general public policy questions which are common to the claims of all class members.

*(3) Implied Contract:*

The Supreme Court remanded this case "for a determination whether a contract to capitalize can be implied from the language of the written instruments.": Buchanan, 457 Pa. at 157, 320 A.2d at 129. As noted by the Supreme Court, at least one type of agreement is "capable of the interpretation that all payments, whether for principal, interest, or taxes, are to be treated identically and as a unit": Ibid.

The Buchanans' mortgage note with Abbott appears to fall into this category. It provides that:

"[A]ll payments to be made under the note secured hereby shall be added together and the aggregate amount thereof shall be paid by the

Mortgagor each month in a single payment to be applied by the Mortgagee to the following items in the order set forth:

"(I) premium charges under the contract of insurance with the Secretary of Housing and Urban Development, or monthly charge (in lieu of mortgage insurance premium), as the case may be;

"(II) ground rents, taxes, special assessments, fire and other hazard insurance premiums;

"(III) interest on the note secured hereby; and

"(IV) amortization of the principal of said note."

Although, in construing the mortgage language, the intention of the parties must govern, "that intention must be ascertained from the entire instrument taking into consideration the surrounding circumstances, the situation of the parties when the contract was made and the objects they apparently had in view and the nature of the subject matter.": Mather Estate, 410 Pa. 361, 367 (1963). Again, oral testimony from individual mortgagors is not required for plaintiffs to prevail.

This being so under plaintiff's implied contract theory, the common question of law or fact prerequisite of Rule 2230 is satisfied.

Class actions are based upon sound equitable principles. To permit defendants to contest liability in separate individual lawsuits where, as here, the claims are small and virtually identical, is the evil that Rule 2230 was promulgated to prevent. In Buchanan, 457 Pa. at 151, n. 17, the Supreme Court cited and quoted J. Pomeroy, A Treatise on Equity Jurisprudence, §III at 143 (5th ed., S. Symons, 1941): "Equity has followed the true principle of contriving its remedies so that they shall correspond both to the primary right of the injured party, and to the wrong by which that right has

been violated." Pa. R.C.P. 2230, cast in equity, is uniquely well suited to the proper handling of class plaintiffs' claims in this case.

## CONCLUSION

In light of the foregoing, the motion to strike the references to the class of unknown defendants is granted. The remaining preliminary objections of defendant, Federal National Mortgage Association, are denied.

## ORDER OF COURT

And now, March 11, 1975, it is hereby ordered and decreed that the motion to strike all references to the class of unknown defendants be and the same is hereby granted. The remaining preliminary objections of defendant, Federal National Mortgage Association, and plaintiffs, are hereby denied.