435 A.2d 208

**ABLIN, INC. T/A Thrifty Rent-A-Car, a corporation, Appellant,**

v.

**BELL TELEPHONE COMPANY OF PENNSYLVANIA, a corporation,**

**and**

**The Reuben H. Donnelley Corporation, a corporation.**

Superior Court of Pennsylvania.

Argued Dec. 2, 1980.

Filed Sept. 25, 1981.

John C. Keir, Philadelphia, for appellant.

Harriet F. Withstandley, Philadelphia, for Bell, appellee.

Thomas E. Zemaitis, Philadelphia, for Reuben, appellee.

Before SPAETH, BROSKY and HOFFMAN, JJ.

BROSKY, Judge:

Ablin, Inc., t/a Thrifty Rent-A-Car (hereinafter "Ablin") filed a Complaint in Equity against both defendant-appellees, containing Class Action Allegations in accordance with Pa.R.C.P. 1704. Both appellees filed preliminary objections in the nature of a demurrer, which objections were denied. Thereafter the appellees filed answers, and the court below held an evidentiary hearing and heard argument on certification of the class. Certification was denied by order dated April 23, 1980.[1] This appeal followed.

The central issue for our determination is whether the class action proposed by Ablin satisfies the prerequisites set forth in Pa.R.C.P. 1702. The court below found that two of

[1]. In *Bell v. Beneficial Consumer Discount Company*, 465 Pa. 225, 229, 348 A.2d 734, 736 (1975), the Supreme Court of Pennsylvania held that orders denying class action status are appealable as final orders.

the five prerequisites, commonality[2] and typicality,[3] were not met. We reverse and remand.

Ablin contends that the proposed class meets the requirements of "commonality" and "typicality." In its complaint, Ablin alleged that it was and is, Bell Telephone's usual business practice to accept subscriptions for classified advertising in its Yellow Pages, from subscribers who are allowed to pay for such advertising in equal monthly installments over a period of 12 months. When Ablin attempted to pay for its advertising in this manner, it was advised that it could not do so, because it was deemed a bad credit risk by Bell. Ablin was told it would have to pay in advance. Thereafter, Ablin paid the full amount of its advertising cost in advance, for the 12 month period. Ablin asserts that neither Bell nor Donnelley extended to it any commensurate rate discount or other benefit to compensate Ablin for requiring it to pay the full amount in advance. By failing or refusing to extend to Ablin such discount or other benefit, Ablin alleged, both appellees discriminated against it. After praying for equitable relief, Ablin stated its Class Action Allegations. The essence of its claim for class certification is contained in paragraph 23:

23. Plaintiff is representative of and sues on behalf of the class of all individuals, partnerships and corporations which have been, as plaintiff has been, discriminated against contrary to law and/or statute, in that they have been required by defendants to pay for classified advertising in defendants' Yellow Pages in advance, contrary to defendants' usual business practice, and without being extended any commensurate discount or other benefit to compensate them for being required to make payments in advance.

In the succeeding allegations, Ablin sets out the requisite averments of fact in support of the prerequisites of Pa.R.

2. Pa.R.C.P. 1702(2).

3. Pa.R.C.P. 1702(3).

C.P. 1702 and the criteria specified in Rules 1708 and 1709, in accordance with Pa.R.C.P. 1704.

The court below made the following findings of fact:

After review of the Amended Complaint, the transcript of the testimony and oral argument on class certification, and the evidence elicited through written interrogatories, this Court concludes that two possible classes emerge. The record indicates, and Defendants do not deny, that at the most, the proposed class could number 36,800, the number of customers who were required to pay in advance during the year in question. However, this figure includes a group of 35,694 "national subscribers". National subscribers are businesses that advertise in directories both inside and outside of Pennsylvania. National subscribers do not contract with the Defendants for advertising. They contract through the National Yellow Pages Service Association which is an advertising agency. This agency, in turn, places advertisements with a representative of the Defendant, Reuben H. Donnelley Corporation, which is a member of the National Yellow Pages Service Association. Defendant, Reuben H. Donnelley Corporation, in turn places ads in local yellow page directories. National subscribers are always required to make advance payment for their advertising.

Edgar H. Simmons, Directory supervisor of sales and service for Bell Telephone Company, testified that there are no conditions under which a national advertiser does not pay in advance. He also testified that no concessions are given to national advertisers for prepayment and that the charges for advertising are exactly the same rate, whether the customer is national or local.

Plaintiff is admittedly a local subscriber. A local subscriber places yellow page advertising directly with Defendant without the intermediate allocation service of National Yellow Pages Services Association.

\*    \*    \*    \*    \*    \*

It also found that "national subscribers are in fact those customers referred to in [Ablin's] complaint and that "na-

tional subscribers are not customers who are treated 'contrary to defendants' usual business practice."

For these reasons, the court below concluded that Ablin's claim was not typical of the claims of national subscribers. It then went on to consider whether Ablin's claim was typical of the claims of local subscribers, who may be divided into two groups: those who are permitted to pay their costs over a 12 month period, and those who are required to pay in advance. The uncontradicted testimony of Mr. Simmons, as adopted by the court below, shows that:

> [o]nly a small percentage of local subscribers pay the full cost in advance. During the year 1978, the year in question, only 204 local advertisers in all of Pennsylvania paid in advance. Of these, 109 were located in the eastern area of Pennsylvania, 49 in Philadelphia County, 28 in various industrial areas of the state and 18 in the Pittsburgh area. Defendant Bell Telephone Company had specific criteria for determining which, if any, of its local subscribers paid in advance for yellow page advertising. A customer is evaluated based on the amount of advertising requested and on its past history on file.
>
> Thus, a credit review is required for
>
> 1. New purchasers who request advertising which cost exceeds $50.00 a month;
> 2. Current advertisers who
>
>     (a) request increases in advertisement by an amount greater than $100.00 a month.
>
>     (b) are classified as "Class D" because of experience by Bell in the manner that the telephone bill has been paid in the past; that is if the customer has been "treated" on at "least three occasions in the last three months" [requiring reminder of overdue bills].
>
>     (c) are slow paying bills and, at the time the advertising request is made, are currently two months delinquent in paying advertising costs.
>
> In all such cases an individual determination is made as to whether payment in advance will be required.

The court concluded that vis-a-vis the other local subscribers, Ablin's claim was not typical, since the facts surrounding each local subscriber's credit worthiness and course of dealing with Bell differ.

The prerequisites to maintaining a class action are set forth at Pa.R.C.P. 1702, which provides:

"Rule 1702.   Prerequisites to a Class Action

One or more member of a class may sue or be sued as representative parties on behalf of all members in a class action only if

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4) the representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709; and

(5) a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708.

We begin our review with an analysis of Ablin's claim. Ablin contends that it is representative of the class of individuals, partnerships and corporations which have been, as it has been, discriminated against by virtue of its having to pay in advance for Yellow Pages advertising "contrary to defendants' usual business practice," and without being extended any commensurate discount or other benefit in return for such advance payment.   To establish what is "defendants' usual business practice," Ablin asked, in his Interrogatories:

1.   Is it your usual business practice to permit subscribers for classified advertising in the Yellow Pages, to pay the annual charge therefor in equal successive monthly payments over a period of 12 months, commencing with the month in which the Yellow Pages is distributed?

The Donnelley corporation responded to this question in the negative. It replied that its "usual and exclusive business practice" was to require "national subscribers" to pay the full amount in advance, and that it has no "usual business practice" regarding the method by which local subscribers, who contract directly with Bell, pay for their advertising. "Such determinations [with regard to local subscribers] are made solely by Bell . . . "

Bell responded, in answer to Interrogatory No. 1, "Yes, for customers with known good credit."

Ablin also asked about the circumstances under which arrangements requiring a person to make advance payments are made. Donnelley again stated that all *national* subscribers are required to pay in advance. Bell responded:

7. Full or partial payment of the charges for advertising may be requested and advertising may be refused *if a customer's credit is unsatisfactory.* (emphasis added).

██ Based upon an examination of the entire record, including the Interrogatories propounded by Ablin and the Answers filed thereto by Bell and Donnelley, we find that the lower court was correct in its determination that national subscribers are not properly includable in the proposed class of

[i]ndividuals, partnerships and corporations [who] have been discriminated against . . . in that they have been required . . . to pay for classified advertising in [Bell's] Yellow Pages in advance, contrary to defendants' usual business practice . . .

While it is true that national subscribers have been required since at least 1960 to pay in advance, it is not the case that such advance payment has been contrary to the usual business practice of the agency with whom they contract, namely, the Donnelley corporation. The "usual business practice" which is under attack here is clearly Bell's, not Donnelley's, since the gist of Ablin's claim of discrimination is that some subscribers are permitted to make payments in installments over a 12 month period, while others, itself

included, are not. Since Ablin is a local subscriber whose mode of payment is governed by Bell, not Donnelley, we do not see how it can purport to represent a class which includes national subscribers. The rationale for requiring Ablin and certain other *local* subscribers to pay in advance does not apply to national subscribers. Some local subscribers are required by Bell to pay in advance because they fall into the category of individuals and businesses for which a credit review is required. Put another way, they are not in the category of those customers "with known good credit." In the case of national subscribers, the steadfast and unalterable policy is advance payment. Mr. Simmons of Bell testified that the policy requiring national subscribers to pay in advance had no relationship to credit worthiness.

The typicality requirement of Pa.R.C.P. 1702(3) is closely akin to both the commonality requirement of subsection (2) and the adequacy of representation requirement of subsection (4). The requirement was designed to ensure that the representative is squarely aligned in interests with the proposed class, on the theory that pursuit by the representative of its own interests will advance the interests of the proposed class members, which are aligned with those of the representative. 1 Newburg on Class Actions § 1115a.

> Self-interest, the motivating force that sparks the adversary system, also sustains the doctrine of class actions. We may trust man to help his fellow man if by doing so he helps himself—particularly if *only* by helping others will he be able to protect and promote his own interests ... Our system of justice tolerates and at times favors litigation through champions who stand or fall with the whole group. (emphasis in original).

Newburg, supra, quoting Homburger, "State Class Actions and the Federal Rule," 71 Colum.L.R. 601, 609 (1971).

Here, the interests of national subscribers are not advanced by advancement of Ablin's interest, since the reason for Ablin's having to pay in advance is connected to Bell's credit review determinations which do not apply to national subscribers. Ablin's claim does not "stand or fall" with the

group of national subscribers. Fundamental to Ablin's claim is the proposition that it, as a local subscriber, must be treated in the same fashion as the category of customers who are permitted to pay in installments, namely, those local subscribers who have been deemed by Bell to be "creditworthy." A national subscriber would gain nothing if Ablin is able to sustain this claim, since credit determinations do not enter the picture insofar as national subscribers are concerned.

In addition, we wish to note that the typicality requirement is very much related to the concept of constitutional standing. As we stated in *Allesandro v. State Farm Mutual Auto Insurance Company,* 259 Pa.Super. 571, 580, 393 A.2d 973, 977 (1978), [rev'd in part, on other grounds 487 Pa. 274, 409 A.2d 347 (1979)], "a person cannot litigate claims of a class of which he is not a member." Since Ablin is not a national subscriber, and since the interests of national subscribers are not aligned with Ablin's, we hold that Ablin has failed to satisfy Pa.R.C.P. 1702(3) with respect to its proposed class consisting of both national and local subscribers.

■ As the lower court correctly noted, Ablin also faces a problem as the representative of a class composed solely of local subscribers.[4] The record shows that there are 204 local subscribers who pay in advance. Of these, it was not established how many were deemed "creditworthy" and allowed to pay in monthly installments.

Applying Pa.R.C.P. 1702 to a potential class of local subscribers only, it is immediately clear that the interests of Ablin and the other local subscribers deemed not "creditworthy" are adverse to the interests of those local subscribers found to be "creditworthy." Those "creditworthy" local subscribers have no reason to challenge Bell's practice of allowing them to pay over a 12 month period. Thus, there is

4. As the lower court acknowledged, it is permitted, under Pa.R.C.P. 1710(c)(2), to divide a class into subclasses and to treat each subclass as a class for purposes of certifying or refusing to certify said class. Here, the class consisting of national and local subscribers could be divided into the following subclasses: national subscribers; "creditworthy" local subscribers; and "non-creditworthy" local subscribers.

no question of law or fact common to the class of all local subscribers. Creditworthy local subscribers do not belong to the class of customers who have been discriminated against contrary to Bell's "usual business practice."

The only remaining class, then, is the subclass of local subscribers required to pay in advance, to which Ablin clearly belongs. The question then becomes whether such class meets the prerequisites of Pa.R.C.P. 1702. However, we are unable to decide this question based upon the present record, since the court below did not address itself to the limited issue of whether Ablin may maintain a class action on behalf of a class consisting solely of those local subscribers who are required to pay for their advertising in the Yellow Pages in advance.

Although there are factual differences with regard to each member of this class, since a separate credit determination is made as to each individual, this fact does not, in our opinion, render Ablin's claim atypical of the class as a whole. Ablin's claim arises from the same practice or course of conduct on the part of Bell that gives rise to the potential claims of every other member of this class, namely, that each was forced to pay in advance contrary to Bell's "usual business practice." See 1 Newburg on Class Actions 1115c. The "question of law or fact" common to the class is the advance payment requirement. Thus, we find that requirements (2) and (3) of Pa.R.C.P. 1702 are satisfied.[5] However, we must remand for a determination as to whether prerequi-

---

5. Satisfaction of the numerosity prerequisite by Ablin was not challenged by Bell or Donnelley in the court below with regard to the class proposed by Ablin, consisting of a total of 36,800 members, of which figure 35,694 are national subscribers. With regard to the class of 204 local subscribers who were required to make advance payment, we find that the numerosity requirement is satisfied. Our finding is based upon an examination of "whether the number of potential individual plaintiffs would pose a grave imposition on the resources of the court and an unnecessary drain on the energies and resources of the litigants should such potential plaintiffs sue individually." *Temple University of the Commonwealth System of Higher Education v. Penna. Dept. of Public Welfare*, 30 Pa.Cmwlth. 595, 603, 374 A.2d 991, 996 (1977). Here, we find that 204 potential litigants poses such an imposition.

sites (4) and (5) of Pa.R.C.P. 1702[6] would be satisfied with regard to a potential class made up of all local subscribers required by Bell to pay for their Yellow Pages advertising in advance, rather than in monthly installments.

Reversed and remanded for proceedings consistent with this opinion.

**6.** Prerequisites (4) and (5) are set out on page 211, infra.