# McDaniel v. Chrysler Corp.

*Mark B. Aronson,* for plaintiffs.
*Frederick N. Egler, Jr.,* for defendant.

SILVESTRI, *J.,* February 24, 1983—These two actions were consolidated for hearing on certification as class actions. The testimony fairly establishes the following facts.

Representative plaintiff Martin McDaniel, herein McDaniel, purchased a 1978 Plymouth Horizon automobile, manufactured by defendant Chrysler Corporation, from North-Hills Chrysler-Plymouth, Inc., herein dealer, on April 27, 1978. The Horizon was equipped with an automatic transmission. McDaniel, at the time of purchase of the Horizon, received from Chrysler a paper entitled "Chrysler Corporation's Limited Warranty For New, 1978 Model Passenger Cars . . .", which provided "Basic Coverage" for the first 12 months or 12,000 miles, whichever occurs first.[1]

---

1. Appendix A for the portion herein relevant.

Several months after the purchase of the Horizon, McDaniel experienced difficulty with the vehicle in that transmission fluid leaked and the transmission didn't operate. McDaniel returned the vehicle to the dealer and the vehicle was repaired by the dealer at no charge to McDaniel. Several weeks thereafter, McDaniel was still experiencing difficulty with the transmission and in July of 1978 the dealer replaced the transmission on the Horizon. Up to this point in time, the dealer made the repairs and replacement of the transmission under the aforesaid limited warranty at no charge to McDaniel.

In January of 1980, McDaniel again experienced transmission fluid leaking and "shifting problems". McDaniel returned to the dealer to have it repaired. The dealer agreed to make the repairs at the cost of McDaniel and not under the Limited Warranty.[2] Instead of having the dealer make the repairs, McDaniel, on April 21, 1980, took the Horizon to Economy Automatic Transmission Service, not a Chrysler dealer. The work performed by Economy was "Remove trans. assy. Reseal & install."

In June of 1980, McDaniel, still experiencing leaking transmission fluid, returned to the Dealer for repairs, which were done at the cost of McDaniel.[3]

McDaniel, at the time of this hearing, testified as follows:

Q. Have you had any problems with the transmission in this car since then?

A. It is constantly leaking transmission fluid. You have to keep refilling it.

---

2. At this point in time the 12 month period of the Limited Warranty had expired.

3. At this point in time both the 12 month period and 12,000 mile limitation by the Limited Warranty had expired.

Representative plaintiff Hilda Solomond, herein Solomond, purchased a 1979 Plymouth Horizon Automobile, manufactured by defendant Chrysler Corporation from Lenny Levy's Chrysler-Plymouth, herein dealer, on March 21, 1979. the Horizon was equipped with an automatic transmission. Solomond also received a limited warranty from Chrysler Corporation, which provided "Basic Coverage" for the first 12 months or 12,000 miles whichever occurs first.[4]

Solomond had difficulties in that the vehicle ". . . would not go into gear. It had 2,000 miles, was laboring and laboring, so finally before the warranty was up, I took it to the dealer, told them the problem, . . ." The vehicle was taken to the dealer on February 28, 1980 and the repair bill indicates a 12 month maintenance charge of twelve dollars, a safety inspection charge of nine dollars, a charge of $4.80 for a filter, and a charge of six dollars for five quarts of oil; the bill also indicates no charge for "Repairs for car jumping into gear."

Solomond continued to have the same problem and, in addition, "it was leaking fluid."

On November 17, 1980[5], Solomond took the vehicle to Scuro Transmission Service, not a Chrysler dealer, for repairs to the transmission for which she paid $25.39.

Solomond continued to have problems with the transmission and, on May 15, 1981, she returned to Scuro, who replaced the transmission with a rebuilt transmission at a cost of $677.02.

McDaniel seeks to represent a class of ". . . all purchasers, owners, lessees, bailees and other consumers of 1978, 1979 and 1980 Horizons and

---

4. Appendix B for the portion herein relevant.

5. At this point in time the 12 month period of the Limited Warranty had expired.

Omnis manufactured, sold and distributed by Defendant, and equipped with automatic transmissions. . ."

Solomond seeks to represent a class of ". . . all purchasers, owners and users of 1979 Horizons manufactured, sold and distributed by defendant. . ."

McDaniel is the borough manager for the Borough of Sewickley. His financial resources were testified to as follows: "I own a home with an equity of approximately $30,000 to $40,000. I have various savings accounts, certificates of deposits, and money market funds as well as other assets such as the automobile I own, which I could sell, to use to pay for this court case, as well as also I am prepared to borrow money to pursue it, and I have talked with a lending institution about that and have received a commitment to borrow funds."

Solomond is a widow and is employed by the County of Allegheny as a secretary to a district justice, and is near retirement age. Solomond was asked the question. "Will you tell us about your financial background and what source of funds you have that you could aid in the financing of this lawsuit?," to which she replied, "I think I could handle it as of now due to the fact that I have always been fortunate; I have worked; I sold a house; I have little equity in savings with three different banks. My son is an engineer, and I am sure that he will be more than happy to help me out, plus I can also borrow money with any bank."

Both McDaniel and Solomond have executed powers of attorney in favor of the law firm of Behrend, Aronson and Morrow providing for a contingent fee of 40 percent of any recovery unless this case is certified as a class action and the court sets some other fee based upon time and effort expended

and the result obtained; McDaniel and Solomond agree to pay all costs relative to pursuing the claim.

The following is a list of the Horizons and Omnis sold by Chrysler through the United States and in Pennsylvania.

|  | Horizons | | Omnis | |
| --- | --- | --- | --- | --- |
|  | U.S. | Pa. | U.S. | Pa. |
| 1978 .......... | 95,852 |  | 71,000 | 3,759 |
| 1979 .......... | 140,490 | 12,038 | 118,372 | 6,197 |
| 1980 .......... | 144,987 | 13,217 | 119,014 | 5,263 |
| 1981 .......... | 52,431 | 4,062 | 114,880 | 2,941 |
|  | as of 4/10/81 | as of 4/10/81 | | as of 9/81 |

By a process of interpolation of the foregoing figures not set forth in any detail in the evidence, representative plaintiffs assert a potential class of 37,500 in Pennsylvania.

The testimony was that the costs of preparation for trial, discovery, experts, costs of notice in the event of certification, and trial would be approximately $11,000, further, that the amount of recovery for members of the class would range from $650 to $1,100.

Representative plaintiffs also submitted a list of 15[6] other individuals who have filed separate suits against Chrysler in this court[7]

Plaintiffs also put in evidence admissions by way of answers to the complaints, request for admissions and answers to interrogatories under the heading "List Of Admissions To Be Read Into The Record."[8]

---

6. There are 17 in the list but the first two on the list are the representative plaintiffs herein.

7. Appendix C.

8. Appendix D.

The prerequisites to class action set forth in Pa. R.C.P. 1702, are:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4) the representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709; and

(5) a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708.

It is important to note that certification of a class action may only be granted if the representative party establishes by competent evidence each of the prerequisites posited by Rule 1702, the burden of which is upon the representative party.

In view of the evidence adduced at the certification hearing, we need only consider prerequisites of rule 1702(2), (3), (4) and (5); as to Rule 1702(4) which refers to the criteria set forth in Rule 1709, we consider only Rule 1709(1) and (3), and as to Rule 1702(5), which refers to criteria as set forth in Rule 1708, we consider only Rule 1708(a)(1); there is sufficient evidence to support the remainder of the criteria set forth in Rules 1708 and 1709 as well as Rule 1702(1).

Confining our consideration first to the testimony given by McDaniel and Solomond at the hearing, it is merely a statement that after the expiration of the limited warranty the dealer refused to make repairs to the transmissions of their vehicles free of charge. While this may also be the fact as to all other purchasers of Horizons and Omnis, neither of plaintiffs

has cited any law which requires dealers to make repairs free of charge beyond the warranty period. In both cases, according to the testimony of both McDaniel and Solomond, the dealers did make repairs free of charge during the warranty period.

The limited warranty provided that Chrysler ". . . will not assume responsibility for: (1) repairs performed by other than authorized Chrysler Corporation dealers; . . ." Both McDaniel and Solomond had their vehicles repaired by other than Chrysler dealers, albeit beyond the warranty period, and both claim they still have "problems" with their vehicles without any evidence that the "problems" are not the result of the repair by the non-authorized repair shops.

The limited warranty further provides that: "This Warranty is the only express warranty made by Chrysler applicable to the vehicle. Any implied warranty applicable to this vehicle is limited in duration to the duration of this written warranty." Neither of the representative plaintiffs have cited any law which renders such limitation of implied warrants void and unenforceable.

McDaniel purchased a 1978 Horizon and Solomond purchased a 1979 Horizon. While both gave evidence as to their "problems", there is neither evidence of the same or similar problems incurred by owners of 1980 and 1981 Horizons or 1978, 1979, 1980 and 1981 Omnis, nor by lessees, bailees or other consumers.

On the claim of breach of warranty, even if there was evidence that Chrysler and its authorized dealers failed to comply with the limited warranty during its effective period as to other owners, McDaniel and Solomond could not be class representatives as required by the criteria of 1709(1) since they would

not be members of the class and lacking any interest would be mere volunteers.

Representative plaintiffs presented a "list of admissions to be read into the record." The list contained the following evidence. All automatic transmissions in all 1978, 1979 and 1980 Horizons and Omnis are identical; that the drive train is identical; that all transaxles and all rear ends are identical; that the design and location of all transmissions, transmission pans, transmission housings, drive trains, transaxles and rear ends are identical; that the distance between the front and rear axles of the four-door models is 99.2 inches and for the two-door model, 96.7 inches; that the distance from the forward most point on the front bumper to the transmission housing is 13.5 inches on four-door models and 20 inches on two-door models; that the distance from the rearward most point of the back bumper to the transmission housing is 126 inches on four-door models and 131.75 inches on two-door models; that the distance between the lowest part of the transmission pan and the ground with a full load and no passengers is approximately 6.35 inches; and that the lower control arm is closer to the ground than the transmission pan.

Representative plaintiffs allege in their complaint that the subject vehicles were defective by reason of defective design. Representative plaintiffs have fallen into the same error as many other plaintiffs, that is, assuming that the allegations in a complaint are part of the record and in evidence in the case. Allegations in a complaint are merely that, allegations, and unless admitted and read into evidence, are not evidence in the case.

Representative plaintiffs placed in the record the foregoing evidence which could or may have been a basis for testimony that the vehicles were improper-

ly designed; this evidence is not such as to permit a lay person to conclude a defective design. Representative plaintiffs did read into the record the names of nine expert witnesses they proposed to call at trial; however, none appeared at the certification hearing. Armed with the aforesaid evidence, had an expert testified as to a design defect in the subject vehicles, we would have no problem finding common questions of fact or law; however, given the state of the record, we cannot find or infer a design defect to provide the requisite commonality.

What we have just recited and concluded applies with equal force to representative plaintiffs' allegation of negligence by Chrysler.

Cardinal in the purpose of a class action is that it be an instrument for the resolution in a single proceeding of multiple claims to avoid a multiplicity of suits in separate and widespread actions. In order to have such a resolution in a single proceeding, it is necessary that there be common issues, the resolution of which determines the rights, duties and liabilities of all the class members and defendant. Common issues relate to defendant's general liability. Mersay v. First Republic Corp. of Am., 43 F.R.C. 465 (S.D.N.Y. 1968) and an identity of rights in the class. Common fact questions exist where the facts establish a common course of conduct, Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909 (CA 9th 1964); Esplin v. Hirschi, 402 Fed. 94 (CA 10 1968), cert. denied 89 S.Ct. 1194 (1969), and the bond among the members is a common legal grievance. There must be this identity of rights or liabilities common to all within the class giving a commonality to those similarly situated. Oas v. Commonwealth, 8 Pa. Commw. 118, 301 A.2d 93 (1973); Oppenheimer v. F. J. Young & Co., 144 F.2d 387 (CA 2 1944).

Common questions of law exist where the conduct of defendant is controlled substantially by the same principle of law even though the conduct may, as it affects the individual member of the alleged class, involve exceptions and modifications of the applicable principles of law and even though the measure and amount of damages of the individual members of the alleged class are different.

Common questions of fact exist when the alleged conduct of defendant is such that it affects the alleged class in substantially the same manner but not in degree even though that conduct may damage the individual member differently.

We conclude that on the record made before us that there is not sufficient evidence to establish that there are questions of law or fact common to the class as to warrant a class action.

Since we have decided absence of common questions and adequate representation, the claims of the representative parties are not typical of the class they seek to represent. "The typicality requirement of Pa. R.C.P. 1702(3) is closely akin to both the requirement of subsection (2) and the adequacy of representation requirement of subsection (4). The requirement was designed to ensure that the representative is squarely aligned in interest with the proposed class, on the theory that pursuit by the representative of its own interest will advance the interests of the proposed class members, which are aligned with those of the representative." Ablin, Inc. v. Bell Tel. Co. of Pa. 291 Pa. Super. 40, 435 A.2d 208 (1981).

A certification hearing is limited to a determination of the existence of the prerequisites of Rule 1702. Subsections (2) and (3) by their very nature require that there be evidence as to the substantive claim of the representative parties and the putative

class. This evidence need not be as detailed as may be required upon the trial on the merits but there should be sufficient evidence from which the court can determine if there is a prima facia claim; in this determination the court neither passes on the credibility of the witnesses nor the merits of the asserted claim.

The criteria of 1709(3) is whether the representative parties have or can acquire adequate financial resources to assure that the interest of the class will not be harmed.

Both McDaniel and Solomond testified as to their financial situation as hereinabove set forth. Solomond is a widow near retirement who is presently employed as a secretary. There was no evidence as to her present income or the amount of her bank accounts or the nature thereof; neither is there evidence of her current or long-term expenses or other obligations, if any. McDaniel's testimony is likewise deficient. The record is barren of whether he is married with a family, separated with children, or single; there is no evidence of his income of the amount of his various accounts; neither is there any evidence of his current or long-term expenses or other obligations, if any, nor is there evidence that he has exclusive control over the assets he mentioned.

The evidence was that the anticipated expense through trial would be $11,000; we believe that with a claimed class of 37,500 members and the cost of preparing, printing and mailing notices, if there be certification, that the estimate of $11,000 is unrealistic, as is the cost of appeals which was estimated to be $2,000 to $3,000.

We conclude that the record, in light of the foregoing, does not establish that McDaniel and Solomond have or can acquire adequate resources

to assure that the interests of the class will not be harmed.

Having determined that common questions of law or fact are lacking, it necessarily follows there cannot be the predominance as required by the criteria of 1708(1).

For the foregoing reasons, certification of these two cases as a class action will be denied.

### ORDER

And now, this February 24, 1982, after hearing, consideration of the briefs of the parties and a review of the record made at hearing, certification as a class action is denied and this action is severed from the action at GD 81-10835 and shall continue as an individual action.