## Pettyjohn v. Selig

418

*Irv Ackelsberg,* for plaintiffs.
*Stephen G. Brown,* for defendants.

CAESAR, *J.*, March 11, 1983—This is a consumer class action seeking declaratory, injunctive and monetary relief under the state's Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1 et seq., and under two federal consumer protection statutes, the Truth-in-Lending Act, 15 U.S.C. §1601 et seq., and the Equal Credit Opportunity Act, 15 U.S.C. §1691 et seq. The suit challenges the business practices of defendant Milton E. Selig and of his two alleged corporate alter-egos, The Selig Foundation, Inc., and Colonial Securities Corporation, which plaintiffs claim were used by him to perpetuate alleged illegalities.

Plaintiffs' complaint alleges in great detail a scheme whereby defendants who own more than 100 slum properties in the City of Philadelphia have induced this class of low-income individuals to pay

them rent and to improve and maintain the properties at their own expense through a pattern of fraudulent, unfair and deceptive practices. Plaintiff alleges that these practices are designed to convince class members that they are buying the properties while defendants retain the unilateral power to evict them at any time.

Pleadings are closed, a motion for certification as a class action under Pa.R.C.P. 1707(a) has been filed and discovery with respect to class action issues pursuant to Pa.R.C.P. 1707(b) has been completed. The motion for certification has been thoroughly briefed and argued orally to the court and now [is] ripe for disposition. On consideration of the pleadings, answers to interrogatories, depositions, affidavits filed in support of motions, etc., the court makes findings of fact and conclusions of law as follows.

## FINDINGS OF FACT

1. Defendants purchased over 200 properties from Housing and Urban Development in order to provide housing for low-income individuals in Philadelphia.

2. Defendants have sold or donated almost one-half of these properties.

3. Presently, defendants collectively own approximately 100 properties, of which approximately 25 are vacant.

4. The representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Pa.R.C.P. 1709.

5. The attorneys for the representative parties will adequately represent the interests of the class.

6. The representative parties have or can acquire adequate financial resources to assure that the interests of the class will not be harmed.

## CONCLUSIONS OF LAW

1. The class is sufficiently numerous that joinder of all members is impractical.

2. There are questions of law and fact common to the class.

3. Common questions of law or fact predominate over any question affecting only individual members.

4. In view of the complexities of the issues and the expenses of litigation, the separate claims of individual class members are insufficient in amount to support separate actions.

5. The claims of the representative parties are typical of the claims of the class.

6. The class action provides a fair and efficient method for adjudication of the controversy.

7. There are no difficulties in the management of this action which would preclude litigation as a class action.

8. The amount which may be recovered by individual class members is not likely to be so small in relation to the expense and effort of administering the action as to render a class action unjustifiable.

9. The particular forum is appropriate for the litigation of the claims of the entire class.

10. The representative parties have no conflict of interest in maintaining the class action.

11. The facts and law bearing on the issue of liability are so nearly common to all claimants as to require all claimants to constitute a single class for determination in a trial restricted to liability.

12. The damage claims of individual claimants vary sufficiently as to require that they be grouped in subclasses for determination of damages.

13. The liability and damages issues are appropriately tried in a single class action.

## DISCUSSION

Rule 1702 of the Pennsylvania Rules of Civil Procedure states the prerequisites to a class action:

"One or more members of a class may sue or be sued as representative parties on behalf of all members in a class action only if

"(1) the class is so numerous that joinder of all members is impracticable;

"(2) there are questions of law or fact common to the class;

"(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

"(4) the representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709; and

"(5) a class action provides a fair and efficient method for adjudiction of the controversy under the criteria set forth in Rule 1708."

### 1. NUMEROSITY

Plaintiff purports to represent a class of Philadelphia residents who, on or after February 19, 1975, entered into residential real estate agreements (including leases, agreements of sale, land installment sales agreements and purchase money mortgages) with defendants Milton E. Selig, Colonial Securities Corp. and/or The Selig Foundation, Inc., for the purpose of acquiring a home for themselves. In determining numerosity, the court should examine "whether the number of potential individual plaintiffs would pose a grave imposition on the resources of the court and an unnecessary drain on the energies and resources of the litigants," Janicik v. The Prudential Ins. Co. of America, 305 Pa. Super. 120, 451 A.2d 451 (1982). The class representative does

not have to plead or prove the exact number of class members, so long as he can define the class with some precision and provides the court with sufficient indicia that more members exist than it would be practicable to join. Id. at 456. In the instant case, the testimony is that defendants originally purchased over 200 Housing and Urban Development properties and presently own approximately 100 properties. The class is sufficiently numerous to warrant trial as a class action.

## 2. COMMON QUESTIONS OF LAW OR FACT

Common questions will generally exist if the class members' legal grievances arise out of the "same practice or course of conduct" as the conduct complained of by the representative party. Ablin, Inc. v. Bell Telephone Co. of Penna., 291 Pa. Super. 40, 435 A.2d 208, 213 (1981). In this case, plaintiffs allege that defendants are engaged in a scheme whereby, through false, fraudulent and misleading representations and impressions, they have induced the members of plaintiff class to pay rent, to fix up the properties at their own expense and to pay other expenses ordinarily assumed by homeowners, while at the same time defendants retain title and the power to evict them whenever they choose. Under these circumstances, the court is satisfied that there are questions of law and fact common to the class.

## 3. TYPICALITY

The purpose of the typicality requirement is to determine whether the class representative's overall position on the common issues is sufficiently aligned with that of absent class members to ensure that his/her pursuit of their own interests will advance those of the proposed class members.

Luitweiler v. Northchester Corp., 456 Pa. 530, 319 A.2d 899, 902 (1974). In this action the court (as will be explained later) will subdivide the class so that each subclass will have adequate representation — i.e., each representative will have a position in common to the subclass members. Thus, the typicality requirement has been met.

## 4. ADEQUACY OF REPRESENTATION

To make this determination, the court must consider: (1) whether the attorney for the representative parties will adequately represent the interests of the class; (2) whether the representative parties have a conflict of interest in the maintenance of the class action; and (3) whether the representative parties have or can acquire adequate financial resources to assure that the interests of the class will not be harmed.

(a) Attorney's Adequacy.

"Generally, until the contrary is demonstrated, courts will assume that members of the bar are skilled in the profession." Janicik, supra. Based upon the pleadings, discovery and motions already filed of record, it can be expected that counsel will competently and vigorously protect the rights of the proposed class.

(b) No Conflict of Interest.

Nothing in this record suggests any conflict of interest in plaintiffs maintaining this action.

(c) Adequate Financial Resources.

Insofar as the parties are being represented by Community Legal Services, Inc., an organization employing over 50 attorneys with an annual budget of $4.5 million, there certainly is no question as to the adequacy of the resources available to the plaintiffs.

## 5. FAIRNESS AND EFFICIENCY
## OF CLASS ACTION

Several criteria must guide the court in this determination. Pa.R.C.P. 1708. They are not exclusive and their importance may vary according to the circumstances. Janicik, supra.

(a) Common Questions Predominate.

Individual questions, even those essential to recovery, are not necessarily fatal to the class action. It is well established, for example, that individual questions as to the amount of damages do not preclude a class action. Janicik, supra. The common question of determining whether defendants are engaged in a fraudulent scheme is critical to the recovery sought here. Should a determination of liability be rendered, the court, through the use of subclasses, can devise a method to determine the appropriate relief. Therefore, this court is satisfied that common questions here predominate and thereby support the fairness and efficiency of this class action.

(b) Manageable Controversy.

The evidence here indicated that the names, addresses and agreements of all potential class members were in the custody of defendants. Consequently, management problems unique to the class procedure would not be unduly burdensome in this action.

(c) Risks of Inconsistent Adjudications.

Several examples of inconsistent adjudications have already taken place in Municipal Court, where potential class members have been defending landlord-tenant actions brought by defendants in the instant action. Compare Colonial Securities Corp. v. Dearry, L.T. 81-09-19-936 (Rose, J.) with Colonial Securities Corp. v. Stroud, L.T. 80-10-14-1119 (Mc-

Cormack, J.). The class action, when compared to separate actions under this criterion, affords the speedier and more comprehensive determination of the claim and, thus, the better means to ensure recovery if the claim proves meritorious or to spare defendants repetitive piecemeal litigation if it does not. Janicik, supra.

(d) Extent and Nature of Already Pending Litigation.

The court is aware of an individual truth-in-lending action in district court. Renee Davis v. Colonial Securities Corp., CA no. 80-1186. It is possible that, under the principles of collateral estoppel, that case will resolve all questions of liability under Count II of plaintiffs' complaint. If that happens, the class-action procedure will provide a swift and efficient means for class members to obtain relief under that decision. However, plaintiffs claim that the "heart of the complaint" is under the Unfair Trade Practices and Consumer Protection Law. The court is aware of no pending litigation against defendants directly raising those claims.

(e) The Particular Forum is Appropriate.

The requirement of an appropriate forum is "nothing more than a statement of the doctrine of forum non convenien(s)" 5 Goodrich-Amram2d §1708(a): 6 (Supp. 1981). Since all transactions in this case involve property and parties within Philadelphia, the forum is appropriate.

(f) Complexity of Issues or Expenses Deterring Separate Actions.

Since we are dealing with low-income individuals, small but meritorious claims may go unlitigated because of the expense of litigating individual claims. Accordingly, a class action is a fair and efficient method of adjudicating this controversy.

## 6. SIZE OF INDIVIDUAL RECOVERY

Under Count I of plaintiffs' complaint, they are seeking treble damages and/or declaratory relief as to the precise character of their possessory right. Additionally, they seek awards of $1,000 and punitive damages for those members with claims under Counts II and III. Therefore, this action may yield sufficient benefits to the class members to justify its use of judicial resources.

## 7. OPPONENTS' CONDUCT GENERALLY APPLICABLE

Because plaintiffs seek declaratory relief, the court must also consider whether defendants have acted or refused to act on grounds generally applicable to the class, thereby making final equitable or declaratory relief appropriate with respect to the class. Pa.R.C.P. 178(b)(2). Plaintiffs have alleged an illegal course of conduct, plan or practice with respect to the Housing and Urban Development properties owned by defendants. If plaintiffs are successful on the merits, equitable and declaratory relief will be appropriate with respect to the class.

For the foregoing reasons, this court was, and continues to be, satisfied that this case is appropriate for disposition as a class action and, accordingly, entered the following

## ORDER

And now, this February 1, 1983, for the reasons set forth in the court's opinion filed today pursuant to Pa.R.C.P. 1710, plaintiffs' motion for class certification is granted.

Accordingly, it is hereby ordered and decreed that:

1. The class certified shall consist of all present or former Philadelphia residents who, on or after February 19, 1975, entered into residential real estate agreements (including leases, agreements of sale, land installment sales agreements and purchase-money mortgages) with defendants Milton E. Selig, Colonial Securities Corp. and/or The Selig Foundation, Inc., for the purpose of acquiring a home for themselves or who will hereafter enter into such agreements.

2. The class shall be subdivided as follows:

(a)(i). Class A shall consist of all class members presently occupying a property as the result of an agreement with defendants who wish to continue to reside in the property during the pendency of this action and who wish to assert rights of ownership in that property, whether legal or equitable, presently existing or inchoate. Membership in this subclass shall be limited to those class members who file of record a written election to be included in the class and who comply with the escrow obligations provided for in paragraph 3(a);

(ii). Those individuals who have already indexed this action as a lis pendens on the property in which they are living shall be deemed to have notice of this action and to have elected to be a member of Class A;

(b) Class B shall consist of class members presently occupying a property as the result of an agreement with defendants, but who do not assert a right of ownership but merely that of a tenant or similar status. Membership in this subclass shall be limited to those class members who file a written election to be included in the class and who comply with the escrow obligations provided for in paragraph 3(a);

(c) Class C shall consist of all other class members, including those who are not presently occupy-

ing a property and those who are presently occupying a property but who subsequently vacate a property prior to the entry of a final order in this action. Members of this subclass shall be deemed to have waived legal or equitable ownership rights and shall be deemed to be seeking only damages in regard to their claim for individual relief. Membership in this subclass shall be limited to those class members who file of record a written election to be included in the class.

3.(a) Members of Classes A & B shall regularly pay to a court approved escrow agent the monthly payment provided for in their lease or other written agreement with defendants. With respect to prospective payments, payment shall be due on February 1, 1983 and shall be due on the first day of each month thereafter. Payments not made by the 10th day of a month shall constitute a default; however, for the first month only, payment made by February 15, 1983 shall be deemed timely made;

(b) If a member of Class A or Class B is two or more payments in default as provided by subparagraph (a), defendants shall be permitted to proceed in the Municipal Court of Philadelphia or other proper forum to obtain an order of possession only. The only defense to such a proceeding will be payment of all escrow payments under subparagraph (a) which are due at the time of the hearing on defendants' request for possession and costs of suit;

(c) Except as provided in paragraph 4, all monies paid pursuant to subparagraph 3(a) shall remain on deposit until further order of this court.

4. Upon its written acceptance of the terms of the escrow, as set forth herein, the Urban League of Philadelphia is appointed to act as escrow agent. In this capacity the Urban League shall:

(a) maintain individual accounts for each member of Class A and Class B in a financial institution of its choice. For each individual plaintiff the escrow agent shall maintain two separate accounts. In the first account shall be deposited payments due from February 1, 1983 and thereafter. In the second account shall be deposited payments which were due prior to February 1, 1983;

(b) make disbursements from such accounts where counsel for both groups of parties consent in writing or as the court directs; and

(c) maintain records of payments and disbursements for each cash account and provide a monthly accounting to counsel and to the court.

In the event that a member of Class A or Class B ceases to be a member of that class, by reason of nonpayment of funds due or otherwise, the escrow agent shall not distribute funds paid on behalf of that plaintiff, except upon order of this court.

5. Until further order of this court, this action shall remain indexed as a lis pendens on all properties occupied by Class A members only.

6. Within 20 days of this order, defendants shall file and serve upon counsel for plaintiffs an affidavit listing:

(a) the addresses of all residential properties presently subject to lease, sales or mortgage agreements with any of defendants and the names of individuals residing at such addresses pursuant to such agreements; and

(b) the names and last known addresses of all other class members.

7. Within 30 days of this order, both parties shall submit proposed notices to be mailed to class members.