## Henzler v. Travelers Insurance Companies

*Michael P. Malakoff,* for plaintiff.
*John Newborg,* for defendant.

SILVESTRI, *J.,* August 7, 1985—This is a complaint in a civil action[1] cast in the form of a class action seeking declaratory relief, equitable relief and monetary recovery.[2]

---

1. Pa. R.C.P. 1001(b)(1) provides that all claims heretofore asserted in assumpsit or trespass shall be asserted in one form of action to be known as a "civil action." Plaintiff has merely entitled her action "Complaint" without any indication of the type or form of action.

2. Pa. R.C.P. 1704(c) provides that the plaintiff may join in the complaint claims for equitable, declaratory and monetary relief arising out of the same transaction or occurrence or series of transactions or occurrences.

Pa. R.C.P. 1001(b)(2) provides that other forms of action which incorporate these rules shall be known as "civil action—[type of action]".

An action in Equity, Rule 1501, declaratory judgments, Rules 1601 and 1602 incorporate the rules relating to a civil action.

Pa. R.C.P. 1020(a) provides, in part, that each cause of action and any special damage related thereto shall be stated in a separate count containing a demand for relief and (d)(1) provides that if a transaction or occurrence gives rise to more than one cause of action against the same person, they shall be joined in separate counts in the action against any such person.

Plaintiff has failed to set forth her substantive claims giving rise to the relief requested in separate counts.

The complaint alleges that Travelers, after paying plaintiff some basic loss benefits pursuant to the No-fault Act[3], as the result of injuries sustained on February 11, 1981, improperly terminated payment of such benefits on and after May 28, 1982.

As provided by Pa. R.C.P. 1707, plaintiff moved for certification of the action as a class action. At the hearing neither plaintiff nor any other witnesses appeared; the only evidence presented in support of plaintiff's motion was by way of admissions from the pleadings, exhibits thereto, answers to interrogatories and a stipulation between counsel. Defendant presented no evidence. From the foregoing evidence, the following facts are established.

Plaintiff, while a passenger in a vehicle owned and operated by Gary Pater, suffered non-fatal injuries in an accident on February 11, 1981. The security for the payment of no-fault benefits was the insurance provided by defendant to Gary Pater on the vehicle in which the plaintiff was a passenger.

Plaintiff was paid by defendant for her loss of work between the date of the accident, February 11, 1981 and the date she returned to work on February 26, 1981. In addition, she was paid for her medical treatment at Allegheny General Hospital on the day of the accident and for physical therapy treatments

---

Plaintiff immediately preceding paragraph 33 of the complaint inserted the following heading.

"Stating A Claim Under The Pennsylvania No-fault Motor Vehicle Insurance Act For Denial Of Basic Loss Benefits."

There is no such form or type of action encompassed within the rules of civil procedure.

3. Act of July 19, 1974, P.L. 489 §101 et seq.; 40 P.S. §1009.101 et seq.; Repealed February 12, 1984, P.L. 26, §8(a), effective October 1, 1984.

thereafter;[4] further, payment was made to her physician H. D. Christman, M.D. for treatment on February 23, 1981 and May 4, 1981.

After more than one year had passed from the date of the accident, plaintiff filed a second application for no-fault benefits dated March 26, 1982. By reason of the time interval, defendant wished to have plaintiff examined and scheduled a physical examination of plaintiff with Dr. Minde.

The insurance policy issued by defendant to Gary Pater (Exhibit 4) contained the following condition:

*"The eligible person* shall submit to mental and physical examinations by physicians selected by the company when and as often as the company may reasonably require. The company will pay the costs of such examinations." (Emphasis supplied).

After defendant had notified plaintiff of the scheduled examination, defendant received a letter from attorney Ronald A. Berlin, dated May 25, 1982 (Exhibit 1) in which Mr. Berlin advised defendant that he had been retained by plaintiff and that all further communications were to be addressed to him. Mr. Berlin further wrote:

"I am personally in the process of obtaining her medical reports from her treating physicians.

"After I have had the opportunity to review the situation, I will determine the reasonableness of your request that Ms. Henzler be examined by Dr. Minde.

"I, therefore, suggest that at this time you cancel the June 7, appointment at 2:00 p.m. with Dr. Minde."

---

4. The bills for the physical therapy treatments of February 25, 1981 and March 2, 1981 at the Allegheny General Hospital were not submitted to defendant until March 15, 1983, which defendant paid on March 30, 1983.

On June 7, 1982, defendant, by letter to Mr. Berlin (Exhibit 2) wrote, as herein relevant, as follows:

"In the conditions sections of our automobile policy, there is a provision for physical examinations. Briefly, it states that the eligible person shall submit to physical examinations by physicians selected by the company when and as often as the company may reasonably require. The company is expected to assume the cost of such examinations.

"In this instance, Ms. Henzler is considered an eligible person. Therefore, please accept this letter as notification of our intent to discontinue her No Fault benefits effective May 28, 1982, the date that you cancelled her medical examination."

On March 31, 1983, defendant by letter to Mr. Berlin (Exhibit 3), wrote, as herein relevant, as follows:

". . . As previously stated in a letter to you by Diana Ziter, Special Representative, the No-fault benefits were cut off as of May 28, 1982, the date on which the independent medical exam which she did not attend was cancelled."

The parties, by written stipulation filed[5], stipulated that in 1983 there were 131,811 and in 1984,

---

5. On March 28, 1985, plaintiff filed interrogatories being 62 in number with 58 subquestions. The interrogatories were to determine, inter alia, other claimants for no-fault benefits who were similarly situated as the plaintiff. Defendant filed a motion for a protective order alleging as a reason therefor that, "Should the court conclude that class certification is not proper in this case, it would be pointless, burdensome and oppressive to require defendant to answer the Interrogatories." After hearing on defendant's motion, this court on May 2, 1985 entered an order denying defendant's motion for protective order. On June 11, 1985, this court entered an order, agreed to and presented by the parties, that the defendant shall answer interrogatories 1-12, 15-17 and 19 and shall produce the documents requested by plaintiff relating thereto and that in lieu of

131,532 vehicles insured by Travelers pursuant to the Pennsylvania No-fault Act; that in 1983 there were 4,045 and in 1984, 4,260, personal injury protection claims filed against Travelers pursuant to its Pennsylvania insurance no-fault policies.

Plaintiff's counsel also placed in evidence an affidavit (Exhibit 5) that his law firm has agreed with plaintiff to advance her all reasonable funds necessary to pursue this action.

Since the proceeding is one for class certification and not on the merits of the underlying claim, we need not examine the substantive allegations and proofs in any detail. However, certain events and relationships in the proofs and the complaint form the limits of the class the plaintiff seeks to represent and are relevant at this time.

The facts clearly establish that plaintiff is neither a named insured of defendant nor did she contract for insurance with defendant. Defendant's insured was one Gary Pater, the owner and driver of the vehicle in which plaintiff was a passenger when she sustained injuries. The rights, duties and obligations between plaintiff and defendant arise out of the No-fault Act. The No-fault Act makes the insurance provided by defendant to Gary Pater the applicable security for basic loss benefits to the plaintiff.[6] Contractual provisions between Gary Pa-

---

defendant answering interrogatories 20, 21 and 23-62 the parties have entered into the attached stipulation. (The interrogatories answered and the stipulation entered into are part of the evidence hereinabove set forth.

6. Section 204(a) Applicable security. The security for the payment of basic loss benefits applicable to an injury to:
". . .

(3) the driver or other occupant of a motor vehicle involved in an accident resulting in injury who is not an insured is the security covering such vehicle."

ter and defendant as to matters not provided for in the No-fault Act in limitation or derogation of the No-fault Act are not applicable to a non-contracting party such as the plaintiff herein. The aforesaid conditions clause (Exhibit 4) relating to mental and physical examinations is not applicable to plaintiff herein and the class similarly situated[7] which she seeks to represent.

Having concluded that the obligations and rights of plaintiff and defendant inter se are to be determined as arising out of the No-fault Act and not the insurance contract, we now address the question of certification.

The prerequisites to class action certification where monetary recovery and equitable and/or declaratory relief is sought is set forth in Pa. R.C.P. 1702, as follows:

Rule 1702. Prerequisites to a Class Action
"One or more members of a class may sue or be sued as representative parties on behalf of all members in a class action only if

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4) the representative parties will fairly and adequately assert and protect the interests of the class under the criteria set forth in Rule 1709; and

_____

7. We express no opinion as to the effect of the conditions clause (Exhibit 4), if any, between Gary Pater and defendant since that question is not before us under the facts of this case.

"(5) a class action provides a fair and efficient method for adjudication of the controversy under the criteria set forth in Rule 1708."

In making our determination of the question of certification, we first address prerequisite (2) of rule 1702, which is referred to as commonality.

Common questions will generally exist if the legal grievance of the representative plaintiffs and the putative class members arise out of substantially the same circumstances, practice or course of conduct, Albin, Inc. v. Bell Telephone Co. of Pa., 291 Pa. Super. 40, 435 A.2d 208 (1981). "The common question of fact means precisely that the facts must be substantially the same so that proof as to one claimant would be proof as to all. This is what gives the class action its legal viability." Alleg. Cty. Housing Auth. v. Berry, 338 Pa. Super. 338, 487 A.2d 995 (1985). Where there is commonality of fact and the fact creates the legal issue, then commonality of law also exists.

The evidence clearly establishes that defendant discontinued basic loss benefits to plaintiff for the sole reason that plaintiff failed to attend a physical examination unilaterally arranged by the defendant. The No-fault Act[8] provides the procedure for an insurer or the entity providing the security for basic loss benefits to obtain a mental or physical examination of a claimant. If the claimant, after hearing, refuses to comply with an order of court for a mental or physical examination, then the court "may make such orders in regard to the refusal as are just;" §403 then sets forth examples of orders which may be made which the No-fault Act states are not in limitation.

---

8. Article IV, sections 401 and 403.

Defendant makes no pretence that it pursued the directive of the No-fault Act to obtain a mental or physical exam of the plaintiff.

It is beyond cavil that not only is there a common question of law and fact, but that the commonality predominates.

In Albin, Inc. v. Bell Telephone Co. of Pa., supra, in addressing typicality, prerequisite (3) of rule 1702, the court stated:

"The typicality requirement of Pa. R.C.P. 1702(3) is closely akin to both the commonality requirement of subsection (2) and the adequacy of representation requirement of subsection (4). The requirement was designed to ensure that the representative is squarely aligned in interest with the proposed class, on the theory that pursuit by the representative of its own interest will advance the interests of the proposed class members, which are aligned with those of the representative . . . ."

Having determined that plaintiffs' and defendant's obligations and rights arise out of the No-fault Act and not the contract of insurance of defendant with Gary Pater, and that there is commonality by reason of defendant's termination of basic loss benefits without compliance with No-fault Act, then it follows that plaintiff's claim is typical of those similarly situated. However, the interest of the named insured of defendant is not advanced by plaintiff herein since the named insured must first obviate the "mental/physical examination" clause, supra, in the named insured's policy of insurance. The representative plaintiff's claim, therefore, and that of those similarly situated, does not stand or fall on the validity or invalidity of the "mental and physical examination" clause of the named insured's policy of insurance when such insurance becomes the security for one who is uninsured.

We next address the prerequisite (1) of Rule 1702, which is generally referred to as numerosity.

The purported class, as stated in the rule, must be "so numerous that joinder of all members is impracticable." There is no magic in numbers. The determination of numerosity is tied to the impracticability of joinder in the first instance and, later in the proceedings, management of the class action. Weiss v. Tenney Corp., 47 F.R.D. 283 (S.C.N.Y. 1969). Whether a number is so large as to make joinder impracticable is not dependent upon an arbitrary limit, but rather upon the circumstances surrounding each case, McMonagle v. Allstate Ins. Co., 227 Pa. Super. 205, 324 A.2d 414 (1974) (dissenting opinion, Hoffman, J.); however, mere speculation as to the number of potential class members is insufficient, Sims v. Parke Davis & Co., 334 F. Supp. 774 (E.D., Mich. 1971), affirm. per curiam, 453 F.2d 1259 (CA 6th, 1971), cert. den. 405 U.S. 978 (1972); Tobert v. Western Elec. Co., 56 F.R.d. 108 (D. Ga. 1972). "Impracticability, as used in the rule, does not mean 'impossibility', but only the difficulty or inconvenience of joining all members of the class. Forbush v. Wallace, 341 F. Supp. 217 (M.D. Ala. 1971, affirm. 405 U.S 970 (1972). In the final analysis it is for the court, after consideration of all the facts and circumstances surrounding the case, in the exercise of its sound discretion, to determine whether it is impractical to join all members of the class as parties. Zeidman v. J. Ray McDermott & Co. Inc., 651 F.2d 1030 (CA 5th, 1981).

A number of facts, other than the actual or estimated number of purported class members, may be relevant to the numerosity question; without limitation, these include a showing that a class, whose bounds are precisely drawn, exists; whether the parties affected are within the jurisdiction of the

court; the amount of the individual claims; failure of the purported class members to realize the existence of a cause of action; the nature of the action; the location of the potential class members; venue of the cause of action; the ease or difficulty with which the class members may be identified; imposition on the resources of the court; and the drain on the energies and resources of the litigants, etc. See Janicik v. Prudential Ins. Co. of Am., 305 Pa. Super. 120, 451 A.2d 451 (1982); Albin, Inc. v. Bell Telephone Co. of Pa., supra; ABC Sewer Cleaning Co. v. Bell of Pa., 293 Pa. Super. 219, 438 A.2d 616 (1981); Temple Univ. of the Comm. System of Higher Ed. v. Pa. Dept. of Public Welfare, 30 Pa. Commw. 595, 374 A.2d 991 (1977); Zeidman v. J. Ray McDermott & Co., supra; De Marco v. Edens, 390 F.2d 836 (CA 2d 1968); Lucas v. Seagrave Corp., 277 F.Supp. 338 (D. Minn. 1967); Siegel v. Chicken Delight, Inc., 271 F.Supp. 722 (N.D. Calif. 1967); Fidelis Corp. v. Litton Industries, Inc., 293 F.Supp. 164 (S.C. N.Y. 1968); Phila. Elec. Co. v. Anaconda Am. Brass Co., 43 F.R.D. 452 (E.D., Pa. 1968); Dale Electronics, Inc. v. R. C. L. Electronics, Inc., 64 F.R.D. 531 (D. N. Hamp. 1971).

Plaintiff in this case did not come forth with any numbers as to the size of the class. The evidence presented is, by way of the filed stipulation, that during each year of 1983, 1984, defendant had outstanding in Pennsylvania approximately 130,000 no-fault policies of insurance; that in each of the aforesaid years there were approximately 4,000 claims filed with the defendant seeking no-fault benefits and that defendant, in pursuit of discovery, hereinabove alluded to, "is unable to determine without an extensive computer or paper claims file search the exact number of claims upon which benefits were terminated because of the insured's

failure to attend a requested medical examination without Travelers obtaining a court order compelling the insured to attend the examination."; additionally, the representative claim is $20,000; the parties affected are within the jurisdiction and venue of this court; the potential class is subject to relatively precise definition; the claim arises out of the No-fault Act and there neither appears nor is there any evidence of problems of management.

While this is a close case on the prerequisite of numerosity by reason of the size of the representative plaintiff's claim, and that many potential class members may have voluntarily complied with defendant's request for a physical examination without defendant's obtaining a court order, we believe that under all of the circumstances and resolving doubt in favor of certification, we determine that numerosity is present. However, in so doing, we are not unmindful that the court has authority, before a decision on the merits, to revoke, alter or amend, on its own motion or on motion of any party, a prior order of certification. Pa. R.C.P. 1710(d).

In Janick v. Prudential Ins. Co. of Am., supra, the court said:

". . . because the requirements for class certification are closely interrelated and overlapping, the class proponent need not prove separate facts supporting each; rather, her burden is to sufficiently establish those underlying facts from which the court can make the necessary conclusions and discretionary determinations . . ."

This is especially true when determining the existence of the implementing criteria of rules 1708 and 1709. Notwithstanding our reservation as to the size of the representative plaintiff's claim and what the size of the class may finally be, we believe that all the circumstances of record support the conclu-

sion that prerequisites four and five, being adequacy of representation and fairness and efficiency of the class action procedure, respectively, are established.

## ORDER

And now, this August 7, 1985, it is hereby ordered as follows:

1. This action is hereby certified as a class action.

2. Deborah Henzler is certified as the representative of the class.

3. The class is defined as follows:

All persons who after January 29, 1983 and before the entry of final judgment in this case were entitled to receive or became entitled to receive no-fault benefits from defendant, The Travelers Insurance Companies, by reason of being a non-fatal victim and who was not an insured of The Travelers Insurance Companies or any other entity authorized to provide security for No-fault Act benefits and for which The Travelers Insurance Companies became the applicable security, as set forth under section 204 of the No-fault Act, for the payment of benefits and whose no-fault benefits were terminated by The Travelers Insurance Companies by reason of the victim failing to take a physical and/or mental examination by a physician chosen by The Travelers Insurance Companies without first obtaining an order of court directing the victim to submit to a physical and/or mental examination.

4. The parties shall proceed forthwith to determine the number and identity of victims within the class as hereinabove defined from the files of The Travelers Insurance Companies during the time period hereinabove set forth together with the amount of the unpaid claim at the time, either at the date of

termination of no-fault benefits or any date thereafter.

To the extent that the information is available, in whole or in part, through computer programs, The Travelers Insurance Companies will furnish the aforesaid information on or before 60 days from the date hereof; to the extent that the information is available, in whole or in part, by way of a paper claim search, The Travelers Insurance Companies will make its claims files, for the period hereinabove set forth, available on or before 60 days from the date hereof, at a time and place designated by the representative plaintiff for examination by the representative plaintiff or her agents.